**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Daryl Alan FRETER, Defendant–**
**Appellant.**

**No. 93–10285.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 12, 1994.

Decided July 25, 1994.

John P. Balazs, Asst. Federal Public Defender, Fresno, CA, for defendant-appellant.

Mark E. Cullers, Asst. U.S. Atty., Fresno, CA, for plaintiff-appellee.

Before: FLETCHER, FERGUSON and TROTT, Circuit Judges.

Opinion by Judge FLETCHER.

FLETCHER, Circuit Judge:

Daryl Alan Freter appeals his jury conviction for failing to notify federal authorities of the release of a reportable quantity of a hazardous substance from a facility in his charge in violation of 42 U.S.C. § 9603(b)(3). We have jurisdiction, and we affirm.

I

In the late 1980's, Freter entered into an agreement with two investors, Carl Long and John Erickson, to manage a research and testing laboratory to study the processing of minerals from various ores with the intent to extract gold and other precious metals. Long and Erickson supplied the funds and materials necessary for the processing venture, while Freter managed the business. As

part of the venture, Freter subleased public lands in California from Harold Barnett. Freter purchased approximately twenty 55–gallon drums of sodium hypochlorite, a hazardous substance under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, to be used to process the ores. *See* 40 C.F.R. § 302.4 (1994). The chemicals were stored on the leased property.

By April 1990, Erickson and Long ceased funding the venture because of poor results and cost overruns. At this point, Freter owed the Barnetts over $6,000 in rent and utilities. When Freter was unable to make these payments, Leeona Barnett ordered him to leave the property. He did so, leaving behind much of the equipment and chemicals, including the drums of sodium hypochlorite. The drums of chemicals were discovered in October 1990 by a firm that was performing an assessment of the property under contract with the Environmental Protection Agency.

On August 27, 1992, Freter was indicted by a federal grand jury on one count of failing to notify a government agency of a release of a hazardous substance under 42 U.S.C. § 9603(b)(3). Specifically, Freter was charged with being responsible for a facility from which a specified quantity of a hazardous substance is "released" and failing to notify the National Response Center of the release. *See* 42 U.S.C. § 9603(b)(3).[1] A "release" includes the abandonment of barrels or other closed receptacles containing a hazardous substance. 42 U.S.C. § 9601(22) (Supp.1993). The government's theory was that a release occurred because Freter aban-

doned the 55–gallon drums of sodium hypochlorite at the site in early April 1990.

After a two day jury trial, Freter was convicted on the single count, sentenced to two years of supervised probation, and ordered to pay a $2,000 fine.

## II

At trial, Freter twice moved for a judgment of acquittal. Fed.R.Crim.P. 29. These motions were denied, and Freter now challenges the district court's rulings. We review such a challenge de novo. *United States v. Hart*, 963 F.2d 1278, 1280 (9th Cir.1992). The test to be applied is the same as a challenge to the sufficiency of the evidence. *United States v. Shirley*, 884 F.2d 1130, 1134 (9th Cir.1989). Consequently, we review the evidence presented against the defendant "in the light most favorable to the government to determine whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)) (emphasis in original).

Freter first argues that there is insufficient evidence to support a finding that he voluntarily abandoned the sodium hypochlorite at the site.[2] Instead, he argues that he was ordered to leave the property after he ceased paying rent and utilities and that he had no permission to return after he left. Freter testified that he returned to the property on May 14, 1990, but because the entrance to the property was locked, he could

---

1. Section 9603(b)(3) provides, in relevant part:
   Any person—

   (3) in charge of a facility from which a hazardous substance is released, other than a federally permitted release, in a quantity equal to or greater than that determined pursuant to section 9602 of this title who fails to notify immediately the appropriate agency of the United States Government as soon as he has knowledge of such release ... shall, upon conviction, be fined in accordance with the applicable provisions of title 18 or imprisoned for not more than 3 years (or not more than 5 years in the case of a second or subsequent conviction), or both.

2. At trial, the district court defined "abandonment," without objection, as follows:

   "Abandonment of property" means the voluntary relinquishment of all right, title and claim and possession of the property with the intention of not reclaiming it. Abandonment includes both the intention to abandon and an act or acts by which the intention is carried into effect. Lapse of time may be evidence of an intent to abandon, and where it is accompanied by acts manifesting such an intention, may be considered by you in determining whether there has been an abandonment.

not return to remove the drums from the site.

The trial testimony regarding whether Freter was locked off the property was mixed. But, even assuming that Freter was unable to go onto the property in May 1990, his claim that he did not abandon the sodium hypochlorite suffers from one serious flaw: Freter never contacted either the Barnetts or the investors in the project in an attempt to gain access to the site and remove the drums. In fact, Freter admitted that after his attempted visit to the property in May 1990, he took no other action with respect to the chemicals and other equipment at the property until October 1992, after he was indicted. A reasonable juror could conclude from this evidence that Freter intended to abandon the chemicals and did in fact abandon them.[3]

Freter next argues that there is insufficient evidence for a jury to conclude that he did not report the release of substances to the National Response Center. This argument is without merit. At trial, Freter testified:

Q. So you knew sodium hypochlorite was a hazardous substance; isn't that right?

A. Yes.

Q. And knowing that, did you notify any government agency from May 1990 until October of 1992 that the hypochlorite was there?

A. First of all, there were no spills. The chemicals were handled properly and they were not disposed of and there was [sic] no spills, there was no release into the atmosphere and there was no requirement to report it.

Q. So in your opinion, there wasn't any requirement to do anything about that; is that right?

A. Well, that's right. . . .

R.T. vol. 2 at 206. Although it is true that Freter did not specifically testify that he did not report the release to the National Re-

sponse Center, a jury could reasonably infer from this testimony that Freter did not report any release because he believed that no release had occurred.

In sum, there is sufficient evidence for a rational juror to conclude beyond a reasonable doubt that Freter abandoned the sodium hypochlorite at the site and failed to report this release to the National Response Center. We therefore affirm the district court's denial of Freter's motion for acquittal.

### III

Freter argues that prosecutorial misconduct requires us to reverse his conviction. He notes that the prosecutor improperly referred in his closing argument to two documents that were never admitted into evidence. The prosecutor told the jury to consider these documents—certified National Response Center records which indicate that an individual named Danny Almon reported the release of sodium hypochlorite—as evidence that Freter did not report the release to the National Response Center.

Because Freter failed to object to the prosecutor's closing argument, we review this challenge for plain error. Fed.R.Crim.P. 52(b); *United States v. Williams*, 989 F.2d 1061, 1071–72 (9th Cir.1993). "A plain error is a highly prejudicial error affecting substantial rights." *United States v. Dischner*, 974 F.2d 1502, 1515 (9th Cir.1992) (internal quotations omitted), *cert. denied*, —— U.S. ——, 113 S.Ct. 1290, 122 L.Ed.2d 682 (1993).

Because the government may not suggest that information not in evidence supports its case, *e.g.*, *United States v. Badger*, 983 F.2d 1443, 1455 (7th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 2391, 124 L.Ed.2d 293 (1993), the prosecutor's reference to the National Response Center documents was improper. However, we conclude that this passing reference was not so highly prejudicial as to affect Freter's substantial rights. Most significantly, there was substantial alternative evidence in the record

---

**3.** We reject Freter's argument that the rule of lenity requires us to resolve any doubt as to whether the drums were abandoned in his favor. We are not faced with the interpretation of am-

biguous statutory language, but instead with the question of whether evidence is sufficient to support a jury conviction. The rule of lenity is inapplicable.

that Freter did not report the release to federal authorities. Freter testified at trial that he did not think there was any requirement that he file a report with a government agency regarding the sodium hypochlorite. In addition, Officer Nelson with the Kern County Sheriff's Office testified that in October 1992 Freter filed a report with his office claiming that the chemicals were stolen. When Nelson asked Freter why he waited more than two years to file the report, Freter answered that he reported the drums as stolen because he needed to prove his innocence in federal court. Although Nelson did not question Freter as to whether he had reported the release to federal agencies, a jury could reasonably infer from Nelson's testimony, when considered in combination with Freter's testimony, that Freter did not report the release. *See, e.g., Badger,* 983 F.2d at 1455–56; *United States v. Perholtz,* 842 F.2d 343, 360–62 (D.C.Cir.), *cert. denied,* 488 U.S. 821, 109 S.Ct. 65, 102 L.Ed.2d 42 (1988).

Second, the trial transcript indicates that the question of whether Freter notified the National Response Center of a release was not contested at trial. The primary issue at trial was whether Freter abandoned the chemicals, and this was the only issue raised in the closing arguments by defense counsel. Freter never testified, nor did the defense ever suggest, that Freter reported the release. In fact, the argument that Freter reported a release is logically inconsistent with Freter's defense that a release never occurred because he never abandoned the drums of sodium hypochlorite.

We also note that the prosecutor's misstatement was not intentional. In fact, the record reflects that defense counsel had stipulated in a pretrial hearing to the authenticity of the documents. The record further suggests that at the time the comments were made, all parties involved believed that the documents had in fact been admitted into evidence. The remarks were not the result of an improper motive on the part of the prosecutor. *See Perholtz,* 842 F.2d at 361.

Finally, although the defendants did not object to the prosecutor's remarks, the court charged the jury that arguments of counsel are not evidence. We have often emphasized the curative power of such instructions. *E.g., United States v. Polizzi,* 801 F.2d 1543, 1558 (9th Cir.1986). In light of these facts, the prosecutor's passing reference in closing argument to two documents that were not in evidence was not plain error. *See United States v. Mostella,* 802 F.2d 358, 360–61 (9th Cir.1986).

IV

Finally, we must determine whether the government failed to prove an essential element of the crime. Section 9603(b)(3) provides that "[a]ny person ... in charge of a facility from which a hazardous substance is released, *other than a federally permitted release,* ... who fails to notify immediately the appropriate agency" may be subject to penalties. 42 U.S.C. § 9603(b)(3) (emphasis added). Freter argues that § 9603(b)(3) requires that the government prove that the release was not "federally permitted" as an element of the offense. Because the district court did not instruct the jury that this was an element of the offense, Freter argues that his conviction must be reversed.[4] Resolution of this issue turns on whether the relevant language of § 9603(b)(3) establishes an affirmative defense or an additional element that the government must prove to establish a crime. This is an issue of first impression in the federal courts.[5]

4. The parties agree that the jury instructions were correct in all other respects. At trial the judge instructed the jury that it had to find the following elements of the crime: (1) that a reportable quantity of hazardous substances was released from a "facility" into the environment (in this case 100 lbs. of sodium hypochlorite); (2) that the defendant was in charge of the facility at which the release occurred; (3) that the defendant knew of the release; and (4) that the defendant failed to notify the National Response Center of the United States Coast Guard.

5. Two courts have repeated the instructions provided by their district courts, but neither has considered specifically whether § 9603(b)(3) requires the government to prove as an element of the offense that a release is not "federally permitted." *See United States v. Laughlin,* 10 F.3d 961, 966 (2d Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 1649, 128 L.Ed.2d 368 (1994); *United States v. Greer,* 850 F.2d 1447, 1453 (11th Cir. 1988).

■ Whether the government must prove that a release is not federally permitted as an element of the offense is a question of law we review de novo. *See United States v. Chatman*, 869 F.2d 525, 527 (9th Cir.1989). However, because the defense did not object to the jury instructions at trial, we will reverse Freter's conviction only for plain error. *United States v. Fagan*, 996 F.2d 1009, 1016 (9th Cir.1993); *United States v. Boone*, 951 F.2d 1526, 1541 (9th Cir.1991). The omission of an element of the offense from the jury instructions constitutes plain error. *United States v. Gaudin*, 997 F.2d 1267, 1272–73 (9th Cir.), *aff'd on other grounds*, 28 F.3d 943 (9th Cir.1994) (en banc).

■ We conclude that the exception for federally permitted releases states an affirmative defense. In doing so, we rely on " '[t]he well-established rule ... that a defendant who relies upon an exception to a statute made by a proviso or distinct clause, whether in the same section of the statute or elsewhere, has the burden of establishing and showing that he comes within the exception.' " *United States v. Green*, 962 F.2d 938, 941 (9th Cir.1992) (quoting *United States v. Guess*, 629 F.2d 573, 576 (9th Cir.1980) (internal quotation omitted)); *see also United States v. Henry*, 615 F.2d 1223, 1234–35 (9th Cir.1980); *United States v. Oettinger*, 817 F.Supp. 819, 821–22 (N.D.Cal.1992).

■ Freter suggests that this rule of statutory construction is inapplicable because the language "other than a federally permitted release" is not set forth in a distinct statutory section, but is stated in a sentence describing the elements of the offense, and is set off only by commas. The doctrine we apply, however, is not limited to statutes in which the relevant language is in a separate section, *see Green*, 962 F.2d at 941 (the proviso may be "in the same section of the statute or elsewhere"), or in which the relevant language is in a separate sentence from that describing the elements of the crime, *see United States v. Chodor*, 479 F.2d 661, 663–64 & n. 2 (1st Cir.), *cert. denied*, 414 U.S. 912, 94 S.Ct. 254, 38 L.Ed.2d 151 (1973) (statute prohibits individuals from having in their "possession or custody, *except under*

*authority from the Secretary of the Treasury or other proper officer*, any obligation or other security made or executed ... after the similitude of any obligation or other security issued under the authority of the United States"); *Hockenberry v. United States*, 422 F.2d 171, 173 (9th Cir.1970); *Tritt v. United States*, 421 F.2d 928, 929–30 (10th Cir.1970); *Oettinger*, 817 F.Supp. at 821–22.

■ We also note that where, as here, a statutory prohibition is broad and an exception is narrow, it is more probable that the exception is an affirmative defense. *United States v. Durrani*, 835 F.2d 410, 421 (2d Cir.1987); *United States v. Mayo*, 705 F.2d 62, 75 (2d Cir.1983) (noting that an affirmative defense is one that " 'does not serve to negative any facts of the crime' ") (quoting *Patterson v. New York*, 432 U.S. 197, 206–07, 97 S.Ct. 2319, 2325, 53 L.Ed.2d 281 (1977)). In this case, releases qualifying as "federally permitted" fall within both the broad definition of prohibited releases and the more narrow exception of permitted releases. Proof that a release is federally permitted therefore does not negate the government's evidence that a release did occur. *See Mayo*, 705 F.2d at 75.

■ Finally, we believe that the definition of a "federally permitted" release— which includes releases authorized under ten separate federal statutory provisions or state laws—further suggests that the exception in question states an affirmative defense. *See* 42 U.S.C. § 9601(10) ("federally permitted" discharges include those authorized under the Clean Water Act, the Solid Waste Disposal Act, the Safe Drinking Water Act, the Clean Air Act, the Atomic Energy Act, and state law). It is far easier for the defendant to present evidence that the release is federally permitted under one of these statutes than for the government to produce evidence that the release is not permitted under any of them. *See Durrani*, 835 F.2d at 421; *United States v. Hester*, 719 F.2d 1041, 1042–43 (9th Cir.1983); *Mayo*, 705 F.2d at 76. We therefore do not believe that Congress intended to require the government to allege

the inapplicability of each of these laws in order to establish a violation of § 9603(b)(3).[6]

## V

We hold that the district court properly denied Freter's motion for acquittal and that the prosecutor's reference to documents that were not in evidence was not plain error. We also hold that, in a prosecution brought pursuant to 42 U.S.C. § 9603(b)(3), the government is not required to assert as an element of the offense that the release is not federally permitted. The judgment of the district court is AFFIRMED.

---

6. In holding that the exception for "federally permitted" releases states an affirmative defense, we do not intend to imply that the government's ultimate burden of proving beyond a reasonable doubt every fact necessary to constitute the offense is altered. Instead, we hold only that if the defendant wishes to rely on this exception, he has the initial burden of going forward with sufficient evidence to raise the exception as an issue. *United States v. Smith*, 981 F.2d 887, 891–92 (6th Cir.1992); *Hester*, 719 F.2d at 1043; *Guess*, 629 F.2d at 577 n. 4. Once the defendant has satisfied his burden of production with respect to the affirmative defense, the prosecution must prove the inapplicability of the defense beyond a reasonable doubt. *Guess*, 629 F.2d at 577 n. 4. In this case, Freter never proffered as a defense that the release was federally permitted.