**P. Wesley FOSTER, Jr., Plaintiff,**

v.

**UNITED STATES of America, General Services Administration, and District of Columbia, Defendants.**

**Civil No. 95–722 (CRR).**

United States District Court, District of Columbia.

May 14, 1996.

Lawrence E. Blatnik, with whom Donald B. Mitchell, Jr., Andrew C. Cooper, and Peder Magee, of Arent Fox Kintner Plotkin & Kahn, Washington, D.C., were on the briefs, for plaintiff.

C. Miles Tolbert, with whom Mary F. Edgar of the Environmental Defense Section, Environmental & Natural Resources Division, United States Department of Justice, Washington, D.C., was on the briefs, for defendant United States.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### INTRODUCTION

The plaintiff seeks to have the Court certify a number of questions for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) and Federal Rule of Civil Procedure 54(b). The Court has set a trial schedule for the balance of this case with trial on the merits to begin on June 17, 1996 and other pretrial dates as set forth in the accompanying Order. A decision on the remaining claims, both legal and factual, by this Court prior to appeal of those issues which have been decided unfavorably to the plaintiff will advance the termination of this litigation and prevent a possible dual appeal and thus save judicial resources. Accordingly, because piecemeal appellate review of these issues would not materially advance the resolution of this case and because circumstances warrant a delay in the entry of final judgment, the Court shall deny the plaintiff's Motion.

### BACKGROUND

On March 29, 1996, the Court denied the plaintiff's Motion for Summary Judgment with respect to the defendants' liability under the Comprehensive Environmental Response Compensation, and Liability Act ("CERCLA") and the Resource Conservation and Recovery Act ("RCRA"). The Court also denied the defendants' Motions for Summary Judgment with respect to their own liability under the CERCLA for future response costs. However, the Court granted the defendants' Motions with respect to their liability for past response costs under the CERCLA, and their liability under the RCRA. In addition, the Court granted the defendants' Motions with respect to the plaintiff's liability as a present owner of the Site under the CERCLA. Accordingly, there remains for adjudication the issue of the defendants' potential liability under the CERCLA as past owners and/or operators of the Site.

The plaintiff subsequently filed a Motion for Certification pursuant to 28 U.S.C.

§ 1292(b) and for the entry of final judgment pursuant to Federal Rule of Civil Procedure 54(b). Therein, he identifies four issues decided by the Court that purportedly warrant immediate appeal:

(1) The grant of the defendants' cross-motions for summary judgment on the plaintiff's claim for recovery of past costs under CERCLA;

(2) The denial of the plaintiff's Motion for Partial Summary Judgment on the liability of each of the defendants;

(3) The grant of the defendants' Motion for Summary Judgment on the plaintiff's claims regarding petroleum substances found at the Site; and

(4) The grant of the defendants' Motions for Summary Judgment on the plaintiff's claims under the RCRA.

Plaintiff's Motion at 1–2. Notwithstanding the pending trial schedule, the plaintiff seeks to have the Court certify each of these issues for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b); the plaintiff seeks the entry of final judgment pursuant to Federal Rule of Civil Procedure 54(b) on issues (1) and (4). The Court addresses each issue in turn and finds the plaintiff's arguments with respect to the foregoing without merit.

## DISCUSSION

■ Under 28 U.S.C. § 1292(b), a litigant may appeal an interlocutory order. This section provides, in pertinent part:

When a district judge, in making a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal to be taken from such order. . . .

28 U.S.C. § 1292(b). Accordingly, in order to establish a basis for interlocutory appeal of a non-final order pursuant to § 1292(b), the moving party must demonstrate three things: (1) that the issue involves a controlling question of law; (2) that substantial contrary authority or other grounds for a difference of opinion exist; and (3) that immediate appeal would materially advance the ultimate termination of the litigation. *Trout v. Garrett*, 891 F.2d 332, 335 n. 5 (D.C.Cir. 1989). The decision whether to certify an issue for interlocutory appeal is addressed to the Court's discretion. *Id.* at 335.

Similar standards govern the decision to allow a party to appeal a final judgment certified under Federal Rule of Civil Procedure 54(b), which conditions appeals from final orders on a determination that "there is no just determination for delay [of appeal therefrom]." Fed.R.Civ.P. 54(b). *See Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 745–46, 96 S.Ct. 1202, 1207, 47 L.Ed.2d 435 (1976); 10 Charles Alan Wright, Arthur A. Miller & Mary Kay Kane, FEDERAL PRACTICE & PROCEDURE § 2658.2 (1983).[1]

Because piecemeal appellate review of the plaintiff's case would not materially advance its termination, and substantial grounds for difference of opinion with the Court's holdings do not exist, the Court shall deny the plaintiff's Motion for Certification under 28 U.S.C. § 1292(b). The rights of the parties will not be irretrievably lost in the absence of an immediate appeal. *See Helstoski v. Meanor*, 442 U.S. 500, 506–08, 99 S.Ct. 2445, 2448–49, 61 L.Ed.2d 30 (1979). Furthermore, circumstances warrant the delay of the entry of a final judgment for the defendants on the plaintiff's claims for investigatory response costs under the CERCLA and his claims under the RCRA until trial on the merits of the plaintiff's remaining claims under the CERCLA; the Court shall therefore deny the plaintiff's Motion under Federal Rule of Civil Procedure 54(b).

---

**1.** Of course, § 1292(b) and Rule 54(b) are distinct:

The former applies only to orders that would be considered interlocutory even if presented in a simple, single-claim, two-party case. Rule 54(b) applies only to adjudications that would be final under Section 1291 if they occurred in an action having the same limited dimensions. Therefore, if an order is final under Section

1291, Section 1292(b) cannot apply and resort must be had to Rule 54(b) in the multiple-party or multiple-claim situation. Conversely, if an order inherently is interlocutory, Rule 54(b) has no bearing on any determination that might be made under Section 1292(b).

10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE & PROCEDURE § 2658.2 (1983) (citations omitted).

I. **BECAUSE SUBSTANTIAL GROUNDS FOR DIFFERENCE OF OPINION DO NOT EXIST WITH RESPECT TO THE COURT'S HOLDINGS AND AN IMMEDIATE APPEAL OF THOSE ASPECTS OF THE COURT'S MARCH 29, 1996 ORDER WITH WHICH THE PLAINTIFF DISAGREES WOULD NOT MATERIALLY ADVANCE THE RESOLUTION OF THIS CASE, THE COURT SHALL DENY THE PLAINTIFF'S MOTION FOR CERTIFICATION.**

Courts have uniformly held that declaratory judgments as to future removal costs are consistent with the CERCLA's purpose of encouraging prompt remedial action. *See O'Neil v. Picillo*, 682 F.Supp. 706, 730 (D.R.I.1988), *aff'd*, 883 F.2d 176 (1st Cir. 1989), *cert. denied*, 493 U.S. 1071, 110 S.Ct. 1115, 107 L.Ed.2d 1022 (1990). Whether the plaintiff is entitled to such a declaratory judgment is the primary issue remaining in this case. That issue, in turn, hinges on a simple question: who is responsible for the contamination at the Site? Notwithstanding the plaintiff's arguments to the contrary, the resolution of this core issue would not be materially advanced by piecemeal appellate review of the plaintiff's claims. Indeed, it is only against a mischaracterization of the Court's holdings that the plaintiff can identify substantial grounds for a difference of opinion. The Court shall therefore deny the plaintiff's Motion for Certification.

A. **The Plaintiff Fails to Identify Substantial Grounds for Difference of Opinion with Respect to the Court's Holding that He is not Entitled to Recover His Investigative Costs Because Such Costs were not "Necessary" within the Meaning of the CERCLA. Moreover, Immediate Appeal of this Issue would not Materially Advance the Termination of this Litigation Since the Facts Necessary to Fix Liability Therefor will be Established at Trial, which is Scheduled to Commence in Five Weeks.**

█ Like the other elements of a prima facie claim for contribution or recovery under the CERCLA, the plaintiff bears the burden of demonstrating that the costs he has incurred were both necessary and consistent with the National Contingency Plan, the regulatory framework governing cleanup under the CERCLA. 42 U.S.C. § 9607(a)(4). Different standards govern the recoverability of initial investigatory costs and cleanup costs. "Because 'the detailed NCP provisions governing other response action cannot reasonably be applied to preliminary monitoring and evaluation of a release of hazardous substances,'" *Marriott Corp. v. Simkins Indus., Inc.*, 825 F.Supp. 1575, 1583 (S.D.Fla.1993) (quoting *Artesian Water Co. v. New Castle County*, 659 F.Supp. 1269, 1294 (D.Del.1987), *aff'd*, 851 F.2d 643 (3rd Cir.1988)), investigatory costs are generally recoverable irrespective of their consistency with the NCP. *See Bowen Engineering v. Estate of Reeve*, 799 F.Supp. 467, 477 (D.N.J.1992); *Carlyle Piermont Corp. v. Federal Paper Bd. Co.*, 742 F.Supp. 814, 821 (S.D.N.Y.1990).

█ Still, a party seeking recovery of investigative costs under the CERCLA must demonstrate that such costs were necessary. *See G.J. Leasing Co. v. Union Elec. Co.*, 854 F.Supp. 539, 561 (S.D.Ill.1994). To show that costs are necessary within the meaning of the CERCLA, the party seeking recovery must demonstrate "1) that the costs [were] incurred *in response to* a threat to human health or the environment and 2) that the costs were necessary to address that threat." *Id.* at 562 (emphasis in original). Thus while "a prima facie case under CERCLA does not include the implementation of clean-up programs," *Simkins Indus.*, 825 F.Supp. at 1581, consistent with the overwhelmingly remedial cast of the CERCLA—which aims to provide incentives for the prompt detection and removal of environmental contaminants—a claimant's investigatory costs must be precipitated by a release of a hazardous substance and necessary to the remediation thereof. *See, e.g., Gache v. Town of Harrison*, 813 F.Supp. 1037, 1046 (S.D.N.Y.1993) ("Obtaining preliminary information on the levels of hazardous substances in the surrounding soil and sediment seems a neces-

sary step before any further action can properly be taken.").

■ The Court granted the defendants' Motion for Summary Judgment on the plaintiff's claims for investigatory costs because it found that the plaintiff had failed to demonstrate that his investigatory costs were necessary. The plaintiff and his business partners did not attempt to ascertain whether the contamination present at the Site presented a threat to either the public health or the environment. Indeed, it is undisputed that they only hired an environmental consultant in order to identify and assess barriers to the development of the Site. While the plaintiff is not required to plead, as part of his prima facie case, that a clean-up program is underway at the Site, he must still demonstrate that the costs for which he seeks recovery were a necessary antecedent to the remediation of the contamination. This the plaintiff failed to do and the cases cited by him in support of his Motion do not provide any authority to relieve him of this obligation. Even if they did, however, there would still remain the question of whether immediate appellate review of this issue would materially advance the resolution of this case. With respect to that question, the Court concludes that, because a decision as to the quantum of liability is ancillary to the determination of liability in the first instance, the resolution of this case would be better effectuated by moving forward on the plaintiff's claims at the trial scheduled for June 1996 and allowing the plaintiff to thereafter take an appeal.

In its April 16, 1996 Order the Court held that the plaintiff's claim for declaratory relief survived the unfavorable judgment on his claim for recovery of past costs. Thus, while limited to the issue of liability for future costs, the essence of the plaintiff's claims under the CERCLA are still viable, namely his allegations that the defendants are responsible for the contamination at the Site.

Should the plaintiff prevail on appeal, the facts necessary to fix liability for past response costs would necessarily have been established at trial. As discussed in the Court's April 16, 1996 Order, section 113(g)(2) of the CERCLA, 42 U.S.C. § 9613(g)(2), provides that in any cost recovery action the District Court shall issue a declaratory judgment on liability for response costs or damages that will be binding in any subsequent action to recover further response costs. This section "[e]ssentially . . . mandates collateral estoppel effect to a liability determination." *United States v. USX Corp.*, 68 F.3d 811, 819 n. 17 (3rd Cir.1995). *See also Kelley v. E.I. DuPont de Nemours & Co.*, 17 F.3d 836, 844 (6th Cir. 1994) ("In providing for the recovery of response costs, Congress included language to insure that a responsible party's liability, once established, would not have to be relitigated.").

Of course, this conclusion reaches all of the issues raised by the plaintiff, including his claims under the RCRA. While the threshold standards necessary to trigger that statute are distinct from those necessary to trigger the CERCLA, the core liability issues are the same, namely who is responsible for the contaminants at the Site. *Cf. Union Carbide Corp. v. Thiokol Corp.*, 890 F.Supp. 1035, 1044 (S.D.Ga.1994) ("Congress intended CERCLA to be cumulative and not merely an alternative to RCRA. . . .") (internal quotation omitted). Should the plaintiff ultimately be permitted to proceed on those claims, a number of the factual determinations necessary to the resolution of any claims under the RCRA, as well as the CERCLA, will have been established, namely the timing and source of the contamination. Moreover, the practical effect of liability under the two statutes, i.e., who should bear what costs, is sufficiently similar under the CERCLA and the RCRA that the estoppel effect of the CERCLA decision should extend to any issue regarding costs under the RCRA. *See Mardan Corp. v. C.G.C. Music, Ltd.*, 600 F.Supp. 1049, 1054 (D.Ariz.1984) ("RCRA compliance costs may also be considered 'response costs' under CERCLA").

**B. The Plaintiff Misconstrues the Standard Employed by the Court in Denying his Motion for Summary Judgment under the CERCLA. He Therefore Fails to Identify Genuine Substantial Grounds for Difference of Opinion with Respect Thereto.**

The plaintiff alleges that "the Court's analysis of the liability of [the defendants] for

future response costs under CERCLA is flawed by its application of an incorrect legal standard for determining liability under Section 107(a)(2) of CERCLA." Plaintiff's Motion at 17. That section fixes liability on "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, ..." 42 U.S.C. § 9607(a)(2).

■ The clear import of the Court's holding was that disputed factual issues surrounding the source and timing of the contamination precluded summary judgment. Indeed, the pertinent subsection of the Court's Opinion fell under a caption reading: "Disputed issues of material fact surround the origin of the lead and mercury at the Site and the time of its disposal." Now, however, the plaintiff points to language by which the Court rejected the *defendants'* contention that, because the plaintiff failed to establish that the defendants had actual control over the disposal of the contaminants at the Site, the defendants were entitled to summary judgment in their favor. Simply put, the plaintiff misconstrues the Court's Opinion and he therefore fails to identify a controlling question of law as to which substantial grounds for difference of opinion exist.

**C. The Defendants Asserted that the Petroleum Substances Found at the Site Fall within the Petroleum Exemption, 42 U.S.C. § 9601(14), and the Record is Devoid of any Evidence that the Substances had become Contaminated with Hazardous Substances so as to Bring Them Outside of the Exemption. The Plaintiff Fails to Identify an Appropriate Basis of Authority to Support His Novel Argument that More was Required to Satisfy the Petroleum Exemption.**

Now that the Court has entered summary judgment in favor of the defendants on his claims regarding kerosene, TPHs, and PAHs found at the Site, the plaintiff raises a novel point: that because the burden of proof was on the defendants to establish their right to the petroleum exemption it was therefore incumbent "on the defendants to establish

conclusively that the petroleum substances found [at the Site] were virgin, unused products...." Plaintiff's Motion at 20. While the plaintiff is correct that the burden is on a party asserting the petroleum exemption to establish their entitlement thereto, it does not follow that the defendants were required to demonstrate that the petroleum substances found at the Site were not "waste" or "used" petroleum products that had become contaminated with hazardous substances.

On this point, the case cited by the plaintiff in support of his argument, *Ekotek Site PRP Cmte. v. Self,* 881 F.Supp. 1516 (D.Utah 1995), is distinguishable. *Ekotek* involved an action under the CERCLA to recover costs associated with the cleanup of contamination at a refinery that recycled used motor oil. *Ekotek,* 881 F.Supp. at 1518. The court held that the used motor oil shipped to the refinery was not within the CERCLA's petroleum exemption in light of the fact that it contained hazardous substances not contained in, or levels in excess of that found in, unused motor oil. *Id.* at 1524–25. The *Ekotek* court indicated that the burden of proof was on the party asserting the exemption and that it had failed to satisfy that burden. *Id.* at 1524.

■ *Ekotek* and the cases cited therein stand for the proposition that used petroleum substances "[do] not fall within the scope of the petroleum exclusion, where the use of the oil results in the presence of elevated levels of hazardous substances." *Id.* In other words, the petroleum exemption does not extend to used petroleum products which, as a result of their use, contain hazardous substances found "in excess of the amounts that would have occurred in petroleum during the oil refining process." *Washington v. Time Oil,* 687 F.Supp. 529, 532 (W.D.Wash.1988). While the party asserting the exemption has the burden of proof on this issue, *Ekotek* and the other cases suggest that, as a threshold matter, the plaintiff must allege that the petroleum products were used and that, by virtue of their use, they became contaminated (prior to their release or threatened release) with hazardous substances. This is merely another way of saying that, like any other CERCLA case, the plaintiff must allege a release or threatened release of haz-

ardous substances; the petroleum exemption requires only that the defendant controvert the plaintiff's allegations concerning the hazardous composition of the petroleum product in order to take advantage of the exemption.

■ Unlike the facts in *Ekotek*, the record in the instant case is devoid of any indication that the petroleum products were used or waste oil, much less that they were contaminated with hazardous substances. Given that there accordingly exists no genuine issue of material fact as to the contamination of the petroleum products found at the Site, the Court entered summary judgment in favor of the defendants. With respect to this holding, the plaintiff has failed to identify a basis of authority to support his argument that more was required of the defendants to take advantage of the petroleum exclusion.

In a related novel argument, the plaintiff also claims that PAHs are not a component of petroleum. *See* Plaintiff's Motion at 21–22. However, he provides no support for such a claim and the authorities he cites fail to mention PAHs. Indeed, the plaintiff's own environmental expert testified to the contrary. *See* Deposition of Kent D. Campbell, attached to United States Reply Memorandum in Support of its Motion for Summary Judgment as Exhibit 2 at 158–59. Because the plaintiff fails to provide support for his contention, it can hardly be said that he has identified substantial grounds for a difference of opinion with respect to the Court's holding.

**D. Notwithstanding His Attempt to Relitigate His Claims under the RCRA, the Plaintiff Fails to Identify a Substantial Ground for Difference of Opinion with Respect to the Court's Conclusion that No Evidence Exists to Support a Finding that the Contamination at the Site may Present an *Imminent* and *Substantial* Endangerment to Human Health or the Environment.**

■ The plaintiff disagrees with the Court's conclusion that there is no evidence in the record to support the allegation that the contamination present at the Site may present an imminent and substantial endangerment to human health or the environ-ment. However, the plaintiff does little more than quarrel with the Court's conclusion. He does not provide substantial grounds for a difference of opinion with respect to the Court's holding (indeed, the Court's conclusion comported with the testimony of the plaintiff's own witness), nor does he explain how immediate appellate review thereof will facilitate the expeditious resolution of this case. As indicated above, the practical effect of a liability decision under the CERCLA will extend to many of the issues that would be raised should he prevail on appeal and then proceed on his claims under the RCRA. Given the utility of moving forward on the plaintiff's remaining claims and the plaintiff's ability to thereafter take an appeal from the case in its entirety, the Court finds that certification of this issue under § 1292(b) is unwarranted.

**II. IN LIGHT OF THE FORTHCOM-ING TRIAL, CIRCUMSTANCES WARRANT THE DELAY OF AN ENTRY OF FINAL JUDGMENT WITH RESPECT TO THE PLAINTIFF'S CLAIMS FOR PAST RESPONSE COSTS AND HIS CLAIMS UNDER THE RCRA.**

Trial is scheduled in less than two months and will establish whether the defendants are responsible for the contamination at the Site. After trial, the parties may take whatever appeal they may choose to the Court of Appeals, which would then have the opportunity to review the case in its entirety. It would therefore make little sense to permit piecemeal appellate review of the issues that were decided unfavorably to the plaintiff. Given the tight schedule on which this case is proceeding and the fact that the issues could hardly be briefed in the Court of Appeals, much less decided, prior to the rendering of a decision in this Court on the remaining claims, the Court finds that circumstances warrant the delay of entry of final judgment on the plaintiff's claims under the RCRA and for the recovery of investigative costs under the CERCLA until the entry of final judgment on all of the plaintiff's claims after trial.

## CONCLUSION

Upon careful consideration of the parties' pleadings, the entire record herein, and the law applicable thereto, the Court shall enter an Order of even date herewith consistent with the foregoing Memorandum Opinion denying the plaintiff's Motions.