UNITED STATES of America, Plaintiff,

v.

IRON MOUNTAIN MINES, INC., et al., Defendants.

STATE OF CALIFORNIA, Plaintiff,

v.

IRON MOUNTAIN MINES, INC., et al., Defendants.

And Related Cross–, Counter–, and Third–Party Claims.

No. Civ–S–91–768 DFL JFM.

United States District Court, E.D. California.

Sept. 30, 1997.

Paul B. Galvani, Ropes and Gray, Boston, MA, James W. Matthews, Ropes and Gray, Boston, MA, for Rhone–Poulenc Inc.

Thomas H. Hannigan Jr., Ropes and Gray, Boston, MA, Thomas G. Redmon, Wilke Fleury Hoffelt Gould and Birney, Sacramento, CA, for Rhone–Poulenc Basic Chemicals Co.

Michael Brian Hingerty, U.S. Environmental Protection Agency, San Francisco, CA, David B. Glazer, U.S. Department of Justice, Environmental Enforcement Section, San Francisco, CA, Yoshinori H. T. Himel, U.S. Attorney, Sacramento, CA, Martin F. McDermott, U.S. Department of Justice, Environment & Natural Resources Division, Washington, DC, for U.S.

Margarita Padilla, California State Attorney General, Oakland, CA, Sara J. Russell, Attorney General's Office of the State of California, Oakland, CA, for State of California.

## MEMORANDUM OF OPINION AND ORDER

LEVI, District Judge.

Rhône–Poulenc, Inc. moves for partial adjudication as to two issues: (1) whether EPA is prohibited by § 104(a)(3)(A) of CERCLA, 42 U.S.C. § 9604(a)(3)(A), from responding to releases of naturally occurring metals; and (2) whether EPA bears the burden of proving that it is not responding to such releases.[1] The United States, joined by the State of California, opposes Rhône–Poulenc's motion and cross moves for summary judgment on the same issues.

### I.

Section 9604(a)(3)(A) of CERCLA prohibits the EPA from ordering a removal or remedial action in response to naturally occurring substances:

> [t]he President [through EPA] shall not provide for a removal or remedial action under this section in response to a release or threat of release ... of a naturally occurring substance in its unaltered form, or altered solely through naturally occurring processes or phenomena, from a location where it is naturally found. ...

42 U.S.C. § 9604(a)(3)(A). According to Rhône–Poulenc, some of the removal or remedial actions ordered by EPA will affect naturally occurring substances.

▮▮▮▮ In 1992, the United States moved for partial summary judgment to eliminate many of Rhône–Poulenc's affirmative defenses. In September 1992, Judge Schwartz issued an opinion, *United States v. Iron Mountain Mines*, 812 F.Supp. 1528, 1548–49 (E.D.Cal.1992), granting the United States' motion as to Rhône–Poulenc's Eleventh Defense in which Rhône–Poulenc asserted a defense based upon § 9604(a)(3)(A).[2] The United States argues that under the law of

---

1. The parties have styled this motion simply as a motion with respect to "naturally occurring" substances.

2. The Eleventh Defense stated: "[i]f Rhône–Poulenc is liable for any of [the United States'] response costs, which Rhône–Poulenc denies,

Rhône–Poulenc is not liable for response costs incurred in responding to a release or threatened release of a naturally occurring substance in its unaltered form, or altered solely through naturally occurring processes or phenomena, from Iron Mountain where it is naturally found, since EPA

the case doctrine Rhône–Poulenc now should be precluded from relitigating whether EPA is prohibited from responding to releases of naturally occurring substances and whether EPA bears the burden of proving that it is not responding to such releases.

Under the law of the case doctrine, a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court, in the identical case. The doctrine is not a limitation on a tribunal's power, but rather a guide to discretion. A court may have discretion to depart from the law of the case where: (1) the first decision was clearly erroneous; (2) an intervening change in the law has occurred; (3) the evidence on [reconsideration] is substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result. Failure to apply the doctrine of the law of the case absent one of the requisite conditions constitutes an abuse of discretion.

*United States v. Alexander,* 106 F.3d 874, 876 (9th Cir.1997) (citations and internal quotations omitted); *see* Fed.R.Civ.Pro. 54(b) (motion for reconsideration); Local Rule 78–230(k) (requiring motion for reconsideration to set forth "what new or different facts or circumstances are claimed to exist").

■■■■ Rhône–Poulenc counters that Judge Schwartz's 1992 opinion only addressed whether judgment should be granted as to an affirmative defense based upon § 9604(a)(3)(A). Rhône–Poulenc contends that Judge Schwartz did not determine whether the specific remedies EPA has selected violate § 9604(a)(3)(A). But the law of the case doctrine applies not only to issues decided explicitly in an earlier opinion, but also to issues decided by necessary implication. *Leslie Salt Co. v. United States,* 55 F.3d 1388, 1393 (9th Cir.1995). Moreover, so long as the issue was decided by necessary implication, it does not matter if the treatment of the issue was summary or somewhat ambiguous. *Id.* at 1392 (citations omitted); *but see Milgard Tempering Inc. v. Selas*

*Corp. of Am.,* 902 F.2d 703, 715–14 (9th Cir.1990) (the law of the case doctrine does not apply where the earlier opinion's pronouncement was dicta).

■■■■ In his 1992 opinion, Judge Schwartz concluded that § 9604(a)(3)(A) "permits response to release of any natural substance released in altered form, or to release of a substance not altered by natural process." *Iron Mountain Mines,* 812 F.Supp. at 1548. He also concluded that "mining constitutes an artificial alteration rather than a naturally occurring process or phenomenon." *Id.* Thus, so long as the specific remedies selected by EPA address releases that are artificially altered by mining, Judge Schwartz's 1992 opinion controls. *See United States v. Kramer,* 913 F.Supp. 848, 854 (D.N.J.1995) (finding that an earlier opinion striking an affirmative defense also "intended to strike defendants' arguments as defenses to cost recoverability").

To date, EPA has issued three Records of Decision regarding Iron Mountain Mine. A Record of Decision ("ROD") is the vehicle by which EPA selects remedies to be implemented at a particular site. EPA issued ROD 1 in 1986. ROD 1 selected the construction of a cap over a portion of Iron Mountain Mine to reduce the release of heavy metals from areas disturbed by mining. Sugarek Decl., ¶ 16. It also selected a number of stream diversions to reduce the contamination coming into the relatively clean water in upper Slickrock and Upper Spring Creeks. Sugarek Decl., ¶ 16. ROD 2, issued in 1992, selected the construction of a treatment plant to neutralize the discharges coming from the underground mines through the Richmond and Lawson Portals. Sugarek Decl., ¶ 19. ROD 2 also selected the capping of seven mining waste piles that were eroding and discharging metals into Boulder Creek. Sugarek Decl., ¶ 19. Finally, ROD 3, issued in 1993, selected the construction of a treatment plant to neutralize the discharges coming from underground mines through the Old / No. 8 Mine Seep. Sugarek Decl., ¶ 37.[3] Thus, the United

___

has no authority to respond to such a release or threatened release."

3. EPA is now in the process of developing ROD 4. In its proposed plan for ROD 4, which was

issued in May 1996, EPA recommended the selection of Slickrock Creek Dam as a remedy. Sugarek Decl., ¶ 39. It is envisioned that Slickrock Creek Dam will "capture and treat area-wide discharges from the Slickrock Creek water-

States would appear correct in offering the following syllogism: all of the RODs issued to date have specifically targeted contamination from the mine workings and mining waste piles; Judge Schwartz determined that releases from mining activity are not naturally occurring; therefore, the law of the case doctrine precludes Rhône–Poulenc from re-litigating the issue of whether the remedies in RODs through 3 violate § 9604(a)(3)(A).

In response, Rhône–Poulenc argues that the law of the case doctrine should yield in light of additional evidence developed during discovery. Judge Schwartz' opinion stated that in 1992 Rhône–Poulenc failed to present any evidence showing that the releases to which EPA was responding were naturally occurring. *Iron Mountain Mines,* 812 F.Supp. at 1548–9. Rhône–Poulenc now is armed with new evidence—in particular a report prepared by its own expert, Shepherd Miller, Inc. ("SMI"). R–P Exh. O. SMI's report attempts to quantify the amount of natural background metals that existed in Boulder Creek and Slickrock Creek around Iron Mountain prior to mining. It also tries to evaluate the percentage of current metal loads in those creeks accounted for by naturally occurring metals. SMI estimates that between 34 and 69 percent of the copper load and between 23 and 36 percent of the zinc load in Slickrock Creek are caused by natural sources, and that between 63 and 100 percent of the copper load and 17 and 23 percent of the zinc load in Boulder Creek are caused by natural sources. R–P Exh. O at iii. These figures far exceed the United States' informal estimates. For example, the United States calculates that pre-mining copper discharges amounted to substantially less

than one percent of the post-mining copper discharges. *See* Sugarek Decl., ¶ 31.

However, this new evidence, even if accurate, does not affect the syllogism stated above. Section 9604(a)(3)(A) provides that EPA "shall not provide for a removal or remedial action ... *in response to* a release or threat of release ... of a naturally occurring substance...." 42 U.S.C. § 9604(a)(3)(A) (emphasis added). SMI's report does not suggest that the remedies EPA has selected up to this point are "in response to" releases of a naturally occurring substance—such that the only reason EPA called for the remedies was to reduce metal levels created by natural conditions at Iron Mountain or that the remedies would have been any different had naturally occurring substances been excluded from the planning process for the ROD. This can be stated with assurance because each of the three RODs is narrowly focused on a particular source of contamination clearly generated by mining activity at Iron Mountain Mine. As such, those remedies are "in response to" releases affected by mining. The SMI report discusses metal levels in Slickrock Creek and Boulder Creek generally. It does not focus on the releases at the site of the cap in ROD 1, the Richmond and Lawson Portals addressed in ROD 2, or the Old / No. 8 Mine Seep addressed in ROD 3. Moreover, SMI confirms that a substantial portion of the contamination at Iron Mountain is man-made.

■ It may well be the case that the remedies selected in RODs 1, 2, and 3 will have some effect on naturally occurring metals, whether such metals make up a minute but measurable portion of the flows or a more substantial percentage. Even so,

shed," including discharges from "excavated, rubblized, and collapsed underground mine workings, sidehill and open pit mines, waste piles, slides, seeps, old processing facilities, and other areas disturbed by mining activity." Sugarek Decl., ¶ 40. Because Slickrock Creek Dam will capture and treat "area-wide" discharges, the Dam may also catch some flows of heavy metals that are naturally occurring. Takata Dep. (Vol. I) at 120:19–121:9.

The court, however, is barred from now considering ROD 4 by § 113(h) of CERCLA, referred to as the "pre-enforcement review bar." Section 113(h) generally provides that federal courts do not have jurisdiction to review preliminary chal-

lenges to EPA's remedy selections. In particular, courts often are prohibited from enjoining EPA remedies that are ongoing. *E.g. Employers Ins. of Wausau v. Browner,* 52 F.3d 656 (7th Cir.1995); *but see United States v. Princeton Gamma–Tech, Inc.,* 31 F.3d 138, (3rd Cir.1994) (holding that a federal court can review, and possibly enjoin, an ongoing EPA remedy where there is "a bona fide allegation of irreparable injury to public health or the environment"). In this case where EPA has yet to definitively select the remedies that will be included in ROD 4, § 113(h) prevents the court from considering ROD 4.

§ 9604(a)(3)(A) is not implicated merely because a response to mining activity will also have the side benefit of catching naturally occurring substances. Only if the "removal or remedial action" is "in response" to a release of naturally occurring substances will the statute bar EPA's removal or remedial order. *See United States v. Ottati & Goss,* 900 F.2d 429, 437–8 (1st Cir.1990); *Amoco Oil Co. v. Borden, Inc.,* 889 F.2d 664, 670–71 (5th Cir.1989) *United States v. Davis,* 794 F.Supp. 67, 69 (D.R.I.1992); *Mid Valley Bank v. North Valley Bank,* 764 F.Supp. 1377, 1385–86 (E.D.Cal.1991). The SMI report does not establish that any removal or remedial action in RODs 1, 2, or 3 was in response to naturally occurring substances.

Rhône–Poulenc contends that it is not its duty to establish that EPA has responded to natural releases. It argues that it is the EPA's burden to prove that it has not so responded. Under this approach, a responsible party could sit mum during the administrative process, wait until a remedy had been chosen and implemented, and then put EPA to its proof that it has not responded to a release of natural substances. Perhaps Rhône–Poulenc would agree that it must at least come forward with some evidence suggesting that there are natural releases. But apparently it would not concede that it must do so during the administrative process before a remedy is selected.

■ The court holds that Rhône–Poulenc bears the burden of demonstrating that EPA has responded to naturally occurring substances and that Rhône–Poulenc must discharge this burden by pointing to evidence in the administrative record. Thus, the SMI report, which was not part of the record of RODs 1, 2, or 3 may not be considered at this juncture. This holding is consistent with Judge Schwartz prior ruling. After noting that the United States had put forward evidence that the releases from Iron Mountain Mine exceeded naturally occurring metal levels, Judge Schwartz placed the burden on

Rhône–Poulenc to rebut the United States' evidence and to prove that the injury caused by the mining-related contamination is divisible from whatever injury might exist from the naturally occurring metals. *Iron Mountain Mines,* 812 F.Supp. at 1548 (citing In re *Acushnet River & New Bedford Harbor,* 722 F.Supp. 893, 897 (D.Ma.1989)). The situation is still the same. It is undisputed that at least a portion of the contamination at Iron Mountain Mine was caused by mining. And RODs 1, 2, and 3 target the areas directly affected by the mining. Thus, at least as to the remedies selected in RODs 1, 2, and 3, the United States has satisfied any burden it might have of showing that its responses were not directed to naturally occurring substances. The burden now falls on Rhône–Poulenc to establish what portion, if any, of its liability should be negated because the response was made more expensive by the inclusion in the remedy of contamination that was naturally occurring.

Placing the burden on Rhône–Poulenc is also consistent with the structure of CERCLA. Under CERCLA, EPA has broad remedial powers, and the court's review is quite limited. The court reviews EPA's remedy selection to ensure that it was not "arbitrary and capricious or otherwise not in accordance with law." 42 U.S.C. § 9613(j)(2). A remedy will not be "in accordance with law" to the extent that it violates § 9604(a)(3)(A) by being "in response to a release ... of a naturally occurring substance...." Just as Rhône–Poulenc has the burden of demonstrating that EPA's remedy selection was arbitrary and capricious, it also bears the burden of demonstrating that the chosen remedy was not in accordance with law because it was in response to naturally occurring substances.[4] Alternatively, the claim that EPA has exceeded its authority may be viewed as an affirmative defense as to which Rhône–Poulenc bears the burden. *See United States v. Freter,* 31 F.3d 783, 788–89 (9th Cir.1994) (defendant bears the

---

4. Rhône–Poulenc argues that § 104(a)(3)(A) is a jurisdictional limit on EPA's authority and that, as a result, the United States bears the burden of proof. This argument might be more persuasive if there was a dispute over whether *any* of the contamination at Iron Mountain was caused by the mining. *See Amoco Oil Co. v. Borden, Inc.,*

889 F.2d 664, 670–71 (5th Cir.1989) (the government can satisfy its burden by showing that any release violates an applicable state or federal standard); *see also United States v. Louisiana–Pacific Corp.,* CIV–S–89–0871 at 21 (E.D.Cal. 1994).

burden of proving that its liability is limited because some portion of the releases fall within the "federally permitted release exception" established by 42 U.S.C. § 9603(a)(3)); [5] *see also Nixon–Egli Equip. Co. v. John Alexander Co.,* 949 F.Supp. 1435, 1442–43 (C.D.Cal.1996) (citing *EEOC v. Kamehameha Schools/Bishop Estate,* 990 F.2d 458, 459 (9th Cir.1993)) (defendant bears the burden of proving it is not liable based on the "petroleum exclusion" in § 101(14)); [6] *In re Acushnet River & New Bedford Harbor Proceedings,* 716 F.Supp. 676, 687 (D.Mass.1989) (addressing § 9607(f) which limits relief to prospective damages); *United States v. Maryland Bank & Trust Co.,* 632 F.Supp. 573, 578 (D.Md.1986) (addressing the exception to the definition of "owner or operator" for "a person, who, without participating in the management of a vessel or facility, holds indicia of ownership primarily to protect his security interest in the ... facility" under § 9601(20)(A)); *United States v. Morrison–Quirk Grain Corp.,* 1990 WL 482139 at * 2–4 (D.Neb.) (addressing pesticide exception under § 9607(i)).

Furthermore, Rhône–Poulenc must meet its burden by relying on the administrative record.[7] As discussed above, the court's role is limited. The standard for judicial review of EPA remedy selection is whether the response action was "arbitrary and capricious or otherwise not in accordance with law." 42 U.S.C. § 9613(j)(2). And "judicial review of any issues concerning the adequacy of any response action taken or ordered by [EPA] shall be limited to the administrative record" unless general principles of administrative law demand that the record be supplemented.[8] 42 U.S.C. § 9613(j)(1). Rhône–Poulenc does not demonstrate that it was barred from submitting information concerning naturally occurring substances during the remedy selection phases of RODs 1, 2, or 3 such that it should be permitted to supplement the administrative record for these RODs at this late date. Without the SMI report, Rhône–Poulenc is back where it was in 1992 before Judge Schwartz. It points to no evidence in the administrative record that would meet its burden of demonstrating that any of RODs 1, 2, or 3 were in any measure "in response to" naturally occurring substances.

### III.

Rhône–Poulenc's motion for partial adjudication is DENIED. The United States' cross-motion is GRANTED.

IT IS SO ORDERED.

---

**5.** Rhône–Poulenc argues that *Freter* supports its view that EPA has the burden of proving that the releases at Iron Mountain are not naturally occurring. Rhône–Poulenc cites to footnote 6, which provides that the defendant only has the initial burden of production, but that the government ultimately has the burden of persuasion. *Freter,* 31 F.3d at 789 n. 6 (citations omitted). *Freter,* however, was a criminal prosecution. Civil cases addressing the federally permitted exception have found that the defendant has the ultimate burden of proving the applicability of the exception, not simply the initial burden of production. *See In re Acushnet River & New Bedford Harbor,* 722 F.Supp. 893, 901 (D.Mass. 1989) (defendant must prove that it falls within the federally permitted release exception established by 42 U.S.C. § 9607(j)); *accord Lincoln Properties, Ltd. v. Higgins,* 1993 WL 217429 (E.D.Cal.).

**6.** Rhône–Poulenc cites an unpublished case holding that United States had the burden of proving that the petroleum exclusion does not apply. *United States v. Poly–Carb, Inc.,* CV–N–91–360 at 15 (D.Nev.1996). That case is contrary to all other authority. *Nixon–Egli,* 949 F.Supp. at 1442–43; *accord Ekotek Site PRP Comm. v. Self,* 932 F.Supp. 1319, 1322–24 (D.Utah 1996); *Foster v. United States,* 926 F.Supp. 199, 205–06 (D.D.C.1996); *Dartron Corp. v. Uniroyal Chemical Co., Inc.,* 917 F.Supp. 1173, 1183–84 (N.D.Ohio 1996).

**7.** Rhône–Poulenc argues that the United States is precluded from adding issues to be resolved by this motion for summary judgment. Rhône–Poulenc Opp'n & Reply at 3. But a party opposing a motion for summary judgment may make any counter-motion that the party desires so long as it is related to the general subject matter of the original motion. *See* Local Rule 78–230(e).

**8.** Again, the result might be different if it were disputed whether any of the contamination was man-made. Under CERCLA, whether a party is liable at all is tried de novo. *See generally* David W. Tundermann & Michael J. Tomko, "Access to EPA Information in CERCLA Enforcement Actions," 2 Nat. Resources & Env't 24, 25 (Spring 1994).