UNITED STATES of America, Plaintiff-Appellee,

v.

Virgil Eugene GUESS, Defendant-Appellant.

No. 79–1786.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 2, 1980.

Decided Sept. 12, 1980.

Manuel V. A. Araujo, Deputy Federal Public Defender, Los Angeles, Cal., for defendant-appellant.

Julia Barash, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee; Kathleen P. March, Asst. U. S. Atty., Los Angeles, Cal., on brief.

* Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

1. 18 U.S.C. § 842(i)(1) states:
   (i) It shall be unlawful for any person—
   (1) who is under indictment for, or who has been convicted in any court of, a crime pun-

Before Chief Judge MARKEY,* and Circuit Judges WALLACE and SKOPIL.

WALLACE, Circuit Judge:

Virgil Guess (Guess) appeals his conviction for possession of explosives by an ex-felon, in violation of 18 U.S.C. § 842(i)(1) (1976). We affirm.

I

On February 14, 1979, a homemade pipe bomb, made with black powder, exploded in and damaged an automobile owned by Elliot. Elliot was the father-in-law of Guess' brother, Stanley Guess (Stanley), and was scheduled to testify against Stanley on the day after the bombing in a legal proceeding for child theft. While during his trial Guess contended that he secured the explosive for sporting purposes, the government produced evidence tending to prove that Guess purchased the black powder for use in the bomb, and helped Stanley construct it.

Guess was charged with violating 18 U.S.C. § 842(i)(1), which makes it unlawful for any person convicted of a crime punishable by imprisonment for a term exceeding one year to receive an explosive which has been shipped or transported in interstate commerce.[1] As defined elsewhere in the statute, the term "explosives" includes black powder. 18 U.S.C. § 841(d). Guess stipulated at trial that, on February 1, 1978, he purchased two one-pound cans of black powder that had previously been transported in interstate commerce. The government proved that Guess had previously been convicted in Oregon of unlawfully carrying a dangerous weapon, a crime pun-

ishable by imprisonment for a term exceeding one year;

. . . .

to ship or transport any explosive in interstate or foreign commerce or to receive any explosive which has been shipped or transported in interstate or foreign commerce.

ishable by imprisonment exceeding one year. Guess does not contest that the government proved each of the elements of 18 U.S.C. § 842(i)(1) beyond a reasonable doubt.

Guess does contend, however, that his purchase of the black powder was made lawful by the exceptions to 18 U.S.C. § 842(i)(1) set forth in 18 U.S.C. § 845(a)(4) and (5). These exceptions, like section 842(i)(1), were enacted as part of Title XI of the Organized Crime Control Act of 1970, Pub.L. No. 91–452, § 1002, 84 Stat. 952 (1970). Title XI sets forth certain licensing and storage requirements for all transactions involving explosives, in addition to the prohibition in section 842(i)(1) of ex-felons' involvement in such transactions. Section 845(a)(4) exempts from the coverage of most of Title XI [2] "small arms ammunition and components thereof." Section 845(a)(5) similarly exempts "commercially manufactured black powder in quantities not to exceed fifty pounds, . . . intended to be used solely for sporting, recreational, or cultural purposes in antique firearms . . . ." Guess argues that these exceptions exempt his purchase of two pounds of black powder.

## II

Guess first relies on the exception embraced in section 845(a)(4). He claims that black powder falls within the definition of "small arms ammunition and components thereof." We hold that the district court correctly rejected this argument. The regulations promulgated by the Bureau of Alcohol, Tobacco, and Firearms to implement the regulations of explosives in 18 U.S.C. § 842, exclude "black powder" from the definition of the term "Ammunition." 27 C.F.R. § 181.11 (1979). Moreover, the broad interpretation urged by Guess would undermine the specific provisions concerning black powder in section 845(a)(5). As we discuss later, the provisions in section 845(a)(5) respecting black powder were carefully drafted to further the specific statutory objective of tightly restricting most transactions in black powder, but easing limits on the sale and purchase of black powder for use by sportsmen in antique firearms. To adopt Guess' interpretation of section 845(a)(4) would entirely frustrate the objectives reflected in section 845(a)(5), because all black powder transactions, notwithstanding purpose or quantity, would be exempted. We conclude that Guess' interpretation of section 845(a)(4) is wrong.

## III

Guess' second contention is that his purchase of black powder was exempted by section 845(a)(5). The essence of Guess' argument is that Congress intended in section 845(a)(5) to provide an absolute exemption for transactions in small quantities of black powder. Guess' interpretation ignores, however, that section 845(a)(5) applies only to black powder "intended to be used solely for sporting, recreational, or cultural purposes in antique firearms . . ." This language is unambiguous, and clearly refutes Guess' interpretation. The facial clarity of the statute is itself sufficient to reject Guess' reading. *United States v. Rone,* 598 F.2d 564, 569 (9th Cir. 1979).

In addition to the clear language of the statute, the legislative history of section 845(a)(5) conclusively demonstrates that the purpose of this language is to distinguish

---

**2.** Sections 845(a)(4) and (5) do not exempt conduct prohibited by 18 U.S.C. § 844 (d), (e), (f), (g), (h), and (i). Section 844(d) forbids and punishes the transport or receipt in interstate commerce of "any explosive with the knowledge or intent that it will be used to kill, injure, or intimidate any individual or unlawfully to damage or destroy any building, vehicle, or other real or personal property . . . ." Guess urges that because the government attempted to show that Guess purchased the black powder to help his brother bomb an auto-

mobile, it was required to prosecute under section 844(d). But the government's decision to prosecute Guess under section 842(i)(1) instead of under section 844(d) was well within its prosecutorial discretion. *See United States v. Farris,* 624 F.2d 890, at 896 (9th Cir. 1980); *United States v. Schmoker,* 564 F.2d 289, 291–92 (9th Cir. 1977) (Hufstedler, J., concurring); *Hutcherson v. United States,* 345 F.2d 964, 967 (D.C.Cir.), *cert. denied,* 382 U.S. 894, 86 S.Ct. 188, 15 L.Ed.2d 151 (1965).

those transactions in black powder which are permissible from those which are not. As originally enacted in 1970, section 845(a)(5) exempted "black powder in quantities not to exceed five pounds." 84 Stat. 952, 958 (1970). The provision was "designed to except . . . a small quantity of black powder, used by 'handloaders' for sporting purposes, from the coverage of the regulatory provisions of [Title XI, 18 U.S.C. § 841 *et seq.*]." H.R.Rep. No. 91–1549, 91st Cong., 2d Sess. 70, *reprinted in* [1970] U.S. Code Cong. & Ad.News 4007, 4047. In 1975, Congress increased the five-pound restriction in section 845(a)(5) to 50 pounds, and added the "intended to be used solely for sporting, recreational, or cultural purposes in antique firearms . . ." provision. The purpose of these changes was twofold. First, Congress sought to relieve the hardship experienced by bona fide sportsmen in obtaining sufficient amounts of black powder at reasonable prices to enable pursuit of legitimate sporting activities. Second, Congress wished to close the loophole in section 845(a)(5) that permitted the purchase or sale of five pounds of black powder without restriction, even if the powder was intended for use in a bomb.

The House Committee on the Judiciary particularly pointed out that "the current law is ineffective in preventing criminal misuse of black powder." H.R.Rep. No. 93–1570, 93rd Cong., 2d Sess. 4 (1974), *reprinted in* [1974] U.S.Code Cong. & Ad. News 7805, 7808. It observed that during fiscal 1972–1974 all reported black-powder bombings had involved bombs containing "less than five pounds of black powder, the amount currently exempted from the law." *Id.* The Committee further stated:

> The current five-pound exemption is replaced by a provision exempting only commercially manufactured black powder in quantities not to exceed fifty pounds, intended to be used solely for sporting,

recreational, or cultural purposes in antique firearms. Thus the new exemption would be limited to the circumstances presented to the Committee—i. e. the lawful sporting user who can use only high-grade, commercially-manufactured black powder in his activities. The bill, therefore, is intended to provide legislative relief tailored to the specific problem presented by the sportsman.

*Id.*

This legislative history demonstrates that the intent requirement embodied in section 845(a)(5) is crucial, since it is the means by which Congress sought to differentiate between permitted and restricted transactions in black powder. The interpretation offered by Guess, which would read this intent requirement out of the statute, is clearly inconsistent with Congress' apparent purpose in amending the exemption in 1974.[3] The district court thus correctly held that Guess' purchase of the black powder violated section 842(i)(1) unless he "intended" to use it for "sporting, recreational, or cultural purposes in antique firearms."

## IV

■ We next consider whether, viewing the evidence in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), Guess' conduct was in fact exempted by section 845(a)(5). "The well-established rule is that a defendant who relies upon an exception to a statute made by a proviso or distinct clause, whether in the same section of the statute or elsewhere, has the burden of establishing and showing that he comes within the exception." *United States v. Henry*, 615 F.2d 1223, 1234–35 (9th Cir. 1980). *See McKelvey v. United States*, 260 U.S. 353, 357, 43 S.Ct. 132, 134, 67 L.Ed. 301 (1922); *Hocken-*

---

**3.** Even if Guess' interpretation of sections 845(a)(4) and/or (5) were correct, a further difficulty might be created by section 845(b), which provides that ex-felons may apply to the Secretary of the Treasury or his delegate for permission to purchase explosive materials. It might be argued that section 845(b) restricts the exemptions in section 845(a) to those ex-felons who obtain permission from the Secretary to purchase black powder. In view of our disposition of this case, however, we need not determine whether section 845(b) limits, or instead merely supplements, the exemptions contained in section 845(a).

berry v. United States, 422 F.2d 171, 173 (9th Cir. 1970). Guess clearly met his burden of producing evidence that he intended to use the gun powder for sporting purposes. Nevertheless, the evidence submitted by the government was sufficient to prove beyond a reasonable doubt that Guess' actual purpose in purchasing the black powder was to enable Stanley, with Guess' help, to construct a pipe bomb. Thus, even if we assume that the burden of persuasion on the issue of intent rested with the government,[4] Guess was properly convicted.

All other issues raised by Guess are meritless.

AFFIRMED.

---

**4.** The general rule is that once a criminal defendant satisfies his burden of production with respect to an affirmative defense, the prosecution must prove the inapplicability of this defense beyond a reasonable doubt. See, e. g., Davis v. United States, 160 U.S. 469, 487, 16 S.Ct. 353, 358, 40 L.Ed. 499 (1895) (insanity); United States v. Hearst, 563 F.2d 1331, 1336 & n.2 (9th Cir. 1977) (per curiam), cert. denied, 435 U.S. 1000, 98 S.Ct. 1656, 56 L.Ed.2d 90 (1978) (duress); United States v. Hermosillo-Nanez, 545 F.2d 1230, 1232 (9th Cir. 1976) (per curiam), cert. denied, 429 U.S. 1050, 97 S.Ct. 763, 50 L.Ed.2d 767 (1977) (entrapment). The facts of this case do not require us to decide whether this general rule applies not only to affirmative defenses that negate culpability, but also to those which, as here, are apparently designed merely to establish the scope of a regulatory scheme.