**UNITED STATES of America, Plaintiff,**

v.

**W.R. GRACE, Alan R. Stringer, Henry A. Eschenbach, Jack W. Wolter, William J. McCaig, Robert J. Bettacchi, O. Mario Favorito, Robert C. Walsh, Defendants.**

**No. CR 05–07–M–DWM.**

United States District Court, D. Montana, Missoula Division.

Aug. 8, 2006.

**1124**

Kris A. McLean, Office of the U.S. Attorney, Missoula, MT, William W. Mercer, Office of the U.S. Attorney, Billings, MT, Thomas L. Sansonetti, David M. Uhlmann, U.S. Department of Justice, Washington, DC, for Plaintiff.

Angelo J. Calfo, Harold Malkin, Michelle K. Peterson, Yarmuth Wilsdon Calfo, Seattle, WA, Michael F. Bailey, Bailey & Antenor, Missoula, MT, David S. Krakoff, Gary A. Winters, Mark Holscher, Mayer Brown Rowe Maw LLP, Washington, DC, Ronald F. Waterman, Gough Shanahan Johnson & Waterman, Palmer A. Hoovestal, Hoovestal Law Firm, Helena, MT, Jeremy Maltby, O'Melveny & Myers, Los Angeles, CA, William Adam Duerk, Michael J. Milodragovich, Milodragovich Dale Steinbrenner & Binney, Missoula, MT, Elizabeth Van Doren Gray, Sowell Gray Stepp & Lafitte, Columbia, SC, William A. Coates, Roe Cassidy Coates & Price, Greenville, SC, Stephen R. Spivack, Bradley Arant Rose & White, Washington, D.C., David E. Roth, Bradley Arant Rose & White LLP, Birmingham, AL, for Defendants.

## ORDER

### I. Introduction

The difficult question presented now is what the Congress meant when it used the term "asbestos." How the word is defined has significant legal ramifications in this criminal case. The definition of "asbestos" sets the parameters of the Clean Air Act's criminal prohibitions and affects the likelihood that alleged conduct in this case will be deemed criminal. If the word "asbestos" as applied in the criminal law includes varieties of winchite and richterite the criminal case involved here is dramatically different than if "asbestos" is defined as the phrase has historically been used by every governmental regulatory agency to address the issue.

The issue gets resolved through motions in limine filed by all parties seeking a ruling on the definition of the term "asbestos" as it appears in the Clean Air Act, 42 U.S.C. § 7412(b)(1).[1] The government urges the Court to adopt a broad reading of the term to include all of the minerals comprising what the government calls "Libby amphibole." The Defendants argue that the proper definition is the narrower one set forth in the regulations implementing the Clean Air Act, which excludes the minerals that comprise the majority of the amphibole found in Libby. For the reasons that follow, I find that the limited definition advocated by the Defendants applies to the Clean Air Act offenses charged in this case.

### II. Background

The Superseding Indictment alleges that the vermiculite mined in Libby was contaminated with amphibole asbestos "composed of a family of closely related minerals including tremolite, winchite, richterite, actinolite and others." Superseding Indictment (Doc. No. 590) at ¶ 4. According to the Superseding Indictment, "[t]his amphibole asbestos has been commonly called 'tremolite.'" *Id.* However, the United States Geological Survey (USGS), working in conjunction with the Environmental Protection Agency (EPA) on the Libby clean-up, analyzed the amphibole at the

---

1. The motions at issue are the government's Motion in limine # 2 to Exclude Evidence and Argument that Defendants Were Regulated by the Clean Air Act's NESHAPs Program (Doc. No. 462) and the Defendants' Joint Motion in limine to Exclude Evidence Based on Sample Results Indicating the Presence of Fibers from Minerals that do not Constitute "Asbestos" Under the Clean Air Act (Doc. No. 474, filed by Defendant Bettacchi on behalf of all Defendants).

Libby mine and concluded that "approximately 84% of the amphiboles can be classified as winchite, 11% as richterite, and 6% as tremolite." Exhibit C to Supplemental Expert Witness Disclosure of Gregory P. Meeker, p.1959.

The EPA acknowledged the reality on the ground in Libby when its Office of Air Quality Planning and Standards issued a report titled *Action Plan: Air Emission from Sources of Contaminant Asbestos.* The report states on page 2: "The asbestiform minerals found at the Libby, MT site were originally thought to be tremolite asbestos, but more specifically may be the asbestiform varieties of winchite and richterite, neither of which is regulated explicitly by any EPA regulation."

The Defendants are charged in Counts II through IV of the Superseding Indictment with violating the Clean Air Act's knowing endangerment provision.[2] The knowing endangerment offense is codified at 42 U.S.C. § 7413(c)(5)(A), which provides in part:

> Any person who knowingly releases into the ambient air any hazardous air pollutant listed pursuant to section 7412 of this title or any extremely hazardous substance listed pursuant to section 11002(a)(2) of this title that is not listed in section 7412 of this title, and who knows at the time that he thereby places another person in imminent danger of death or serious bodily injury shall, upon conviction, be punished by a fine under

Title 18, or by imprisonment of not more than 15 years, or both.

Section 7412(a)(6) defines "hazardous air pollutant" as "any air pollutant listed in [Section 7412(b)]." Section 7412(b)(1) provides a compendium of hazardous air pollutants listed by their chemical names and in most cases accompanied by the corresponding Chemical Abstract Services (CAS) number. Included on the list is "Asbestos," along with its CAS number 1332214.

Although the criminal knowing endangerment provision of 42 U.S.C. § 7413(c)(5)(A) refers to § 7412 for its list of proscribed pollutants, § 7412 is not a criminal statute. It is part of a civil regulatory scheme intended to set emissions standards for certain regulated sources of pollution. Following the 1990 Amendments to the Clean Air Act, EPA was required to identify categories of sources[3] for each of the pollutants listed in § 7412(b)(1). Congress then directed EPA to promulgate regulatory emissions standards for all major sources and for those selected area sources which EPA determines present a threat of adverse health effects. 42 U.S.C. § 7412(a)(1)-(3), (c)(1)-(3), (d)(1). These standards are known as National Emissions Standards for Hazardous Air Pollutants, or NESHAPs. This statutory command was accompanied by a savings provision at 42 U.S.C. § 7412(q)(1), which clarified that pre-existing regulatory standards in effect under the prior version of the section would re-

---

2. Defendant Grace is charged alone in Count II; Counts III and IV name Defendants Grace, Stringer, Wolter and Bettacchi. Superseding Indictment at ¶¶ 185–190.

3. There are two types of sources relevant to this discussion. A "major source" is
any stationary source or group of stationary sources located within a contiguous area and under common control that emits or

has the potential to emit considering controls, in the aggregate, 10 tons per year or more of any hazardous air pollutant or 25 tons per year or more of any combination of hazardous air pollutants.
42 U.S.C. § 7412(a)(1).
An "area source" is "any stationary source of hazardous air pollutants that is not a major source." 42 U.S.C. § 7412(a)(2).

main in effect following the 1990 Amendments.

One such pre-existing standard was set forth in regulations established in response to the enactment of the Clean Air Act of 1970. The regulations, established in 1973, set emissions standards for asbestos. 38 Fed.Reg. 8820, 8826 (April 6, 1973). The regulations include a definition of asbestos for purposes of § 7412 of the Clean Air Act that has been substantially unchanged since 1973 and was in effect at the time of the 1990 Amendments to the Act. The definition is codified at 40 C.F.R. § 61.141 and states: *"Asbestos* means the asbestiform varieties of serpentinite (chrysotile), riebeckite (crocidolite), cummingtonite-grunerite, anthophyllite, and actinolite-tremolite." [4] Section 61.141 appears under the heading "Subpart M–National Emission Standard for Asbestos." Also under that heading is 40 C.F.R. § 61.140, which states: "The provisions of this subpart are applicable to those sources specified in §§ 61.142 through 61.151, 61.154, and 61.155." The parties agree that Defendant Grace's Libby mine was not a regulated source under § 61.140 and was therefore not subject to the civil regulatory emissions standards established under that subpart.

The Defendants argue that § 61.141's six-species definition of asbestos is nonetheless applicable in this case because that regulation interprets § 7412(b)(1), which in turn supplies the identification of hazardous air pollutants for § 7413(c)(5)(A), the section defining the criminal offense. The United States argues that the six-species definition should not apply because it appears in a civil regulation and therefore cannot be relied upon to define the content of a criminal offense. The parties have attempted to force a resolution of this dispute once before, but the Court deferred consideration of the matter until trial. *See United States v. W.R. Grace,* 429 F.Supp.2d 1207, 1238 (D.Mont.2006).

Since then, the parties' expert disclosures have revealed that each side intends to present expert testimony that assumes that the legal definition of "asbestos" for purposes of the Clean Air Act will be the one it favors. The government's witnesses intend to give opinions on the dangers of "Libby amphibole," the composite of all minerals found in Libby including winchite and richterite.[5] The Defendants have retained expert witnesses who intend to testify that winchite and richterite are not regulated by any federal agency.[6] If the legal dispute is left unresolved, the jurors will hear lengthy and potentially confusing testimony from two distinct sets of experts offering opinions based on different standards which cannot both be correct. How asbestos is defined is a legal question that when answered will dictate the nature and kind of proof that can be presented to the jury.

## III. Analysis

### A. Legal standard

The pending motions present a question of statutory construction. Because this is

---

**4.** Similar definitions of "asbestos" appear elsewhere in the regulatory state, including: 29 C.F.R. § 1910.1001 (adopted by OSHA); 30 C.F.R. § 71.702(a) (adopted by MSHA); 16 C.F.R. § 1304.3(b) (adopted by CPSC); and 40 C.F.R. § 763.163 (adopted by EPA). Also, Congress similarly defined "asbestos" in the Asbestos Hazard and Emergency Response Act ("AHERA"), 15 U.S.C. § 2642(3), enacted in 1986.

**5.** *See* for example expert witness disclosures for government witnesses Gregory P. Meeker, James Millette, Christopher Weis and Aubrey Miller.

**6.** *See* for example expert witness disclosures for defense witnesses Charles Blake, Arthur Langer, Elizabeth Anderson, Joseph Rodricks, Mickey Gunter, Richard Lee, Fred Pooley and John Addison.

an issue of statutory construction, the parties' extensive citation to one another's historical positions on the interpretation and applicability of the emissions regulations is not helpful. Evidence of a party's previously adopted interpretation, whether it be the government or the Defendants, is no use in determining what Congress intended in enacting 42 U.S.C. § 7413(c)(5)(A). In this regard, allegations that a party is attempting to "have it both ways" are particularly inapposite, as the canons of statutory construction do not employ principles of estoppel.

■ In interpreting a criminal statute to determine what it means, courts must look first to the language of the statute, and second to the legislative history of the law. *United States v. Weitzenhoff,* 35 F.3d 1275, 1283 (9th Cir.1994). A court should seek to "give effect to the plain, common-sense meaning of the enactment without resorting to an interpretation that defies common sense." *United States v. Bonilla–Montenegro,* 331 F.3d 1047, 1051 (9th Cir.2003) (internal quotation marks omitted). The plain language of the statute is to be ignored only when a literal interpretation of the statute would thwart the purpose of the statutory scheme and lead to an absurd result. *County of Santa Cruz v. Cervantes,* 219 F.3d 955, 960 (9th Cir. 2000). Courts should also reject any interpretation that would render another statutory provision surplusage or a nullity. *Id.* at 961. Resort to the legislative history for aid in interpreting a statute is only appropriate when the terms of the statute are ambiguous. *Burlington N. R.R. Co. v. Oklahoma Tax Comm'n,* 481 U.S. 454, 461, 107 S.Ct. 1855, 95 L.Ed.2d 404 (1987) ("Unless exceptional circumstances dictate otherwise, when we find the terms of a statute unambiguous, judicial inquiry is complete." (internal quotation marks omitted)).

■ When a criminal statute's meaning remains ambiguous after application of the rules of statutory construction, the rule of lenity requires that the law be interpreted to cover only conduct that clearly falls within its scope. *United States v. Lanier,* 520 U.S. 259, 266, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997); *United States v. Shabani,* 513 U.S. 10, 17, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994).

**B. Discussion**

**1. The Court's prior CERCLA Order**

■ The government first argues that this Court has already decided the matter at issue during the EPA's civil enforcement action against Grace. The government cites the March 9, 2001 Order in which the Court wrote, "The Action Memorandum demonstrates a 'reasonable basis' to believe that asbestos contamination is a problem in Libby. The conclusion is as plain to see as the East Front of the Rocky Mountains." *United States v. W.R. Grace & Co.,* 134 F.Supp.2d 1182, 1188 (D.Mont.2001). The government argues that because this finding was "not limited to one of the six commercial types of asbestos," Govt.'s Br. (Doc. No. 462) at p. 5, it constitutes a finding that all of the "Libby amphibole," including winchite and richterite, is asbestos for purposes of the Clean Air Act.

The flaws in the government's argument are self-evident. The 2001 Order was issued in the context of a civil clean-up action under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA). It did not consider or rule upon any provision of the Clean Air Act, particularly the criminal part of that law. Moreover, the language of the opinion is an analysis of whether the EPA had a reasonable basis to believe there may have been at the time a "release or threat

of release of a hazardous substance or pollutant or contaminant" under CERCLA, 42 U.S.C. § 9604(e)(5)(B). CERCLA defines "pollutant or contaminant" very broadly to include, but not be limited to:

> [A]ny element, substance, compound, or mixture, including disease-causing agents, which after release into the environment and upon exposure, ingestion, inhalation, or assimilation into any organism, either directly from the environment or indirectly by ingestion through food chains, will or may reasonably be anticipated to cause death, disease, behavioral abnormalities, cancer, genetic mutation, physiological malfunctions (including malfunctions in reproduction) or physical deformations, in such· organisms or their offspring. . . .

42 U.S.C. § 9601(33). Given this broad definition, it is clear that the Court could have found that EPA had a rational basis for its belief that there was a present threat of a release of a hazardous pollutant or contaminant without necessarily finding that winchite and richterite are "asbestos" for purposes of the Clean Air Act. The CERCLA statute strives to clean and restore the environment. The criminal part of the Clean Air Act seeks to establish culpability for harmful events in the environment that cause serious risks to the well being of humans.

### 2. Interpretation of 42 U.S.C. §§ 7413(c)(5)(A) and 7412(b)(1)

■ Section 7413(c)(5)(A) poses a difficult interpretative challenge because it draws its definition of "hazardous air pollutant" from § 7412, which is a civil regulatory statute. The matter is complicated by the existence of a NESHAP Program regulation promulgated under § 7412 that defines "asbestos." Normally, an implementing regulation is a legitimate place to search for clarification of the meaning of a statute. On the other hand, the language

of § 7412(b)(1) includes not just the word asbestos but also a corresponding CAS number, suggesting that Congress felt the proper path to an interpretation runs through the CAS registry. Regardless of which path one follows, the conclusion is an ambiguous statute that must be construed so that it criminalizes only conduct that is clearly prohibited.

If reading the Clean Air Act's criminal knowing endangerment provision is confined to the text of the statute, the reader is left with a general description of "asbestos" as one of the prohibited hazardous air pollutants. The government urges the Court to confine its reading of the statute to that single word definition, which would make the jury's finding regarding this element dependent entirely on expert testimony as to what minerals constitute asbestos. But as is clear from reading the CAS registry (discussed in greater detail below), the Code of Federal Regulations, and the many expert disclosures filed in this case, there is not a consensus on the definition of asbestos. A defendant on trial for releasing "asbestos" would be apprehensive about the prospect of his fate turning on which expert the jury found most persuasive in describing which minerals fall within the scope of the criminal offense. More problematic is that disputed expert testimony would define an element of the offense, a matter that is the province of the court. Thus, § 7412(b)(1)'s use of the term "asbestos" fails to provide the requisite fair warning about what conduct is considered criminal. See Lanier, 520 U.S. at 266–267, 117 S.Ct. 1219.

But the text of the statute is not all there is to go on in determining what conduct has been proscribed. The regulations implementing § 7412 provide the six-species definition of asbestos advocated by the Defendants. The government argues that reference to the regulations is inap-

propriate because "this is not a NESHAPs case." Govt.'s Reply Br. at p. 2. The argument is correct on that point, and the Defendants have not argued otherwise. Even so, this is not a civil case either, yet § 7413(c)(5)(A) relies upon a civil regulatory statute (§ 7412(b)(1)) for its listing of hazardous air pollutants. The conundrum the government must explain is why reliance on a civil statute is permissible but reliance on a civil regulation is not.

The answer from the government is that the regulatory definition does not apply because it is part of a regulatory scheme that did not govern Grace's Libby operation. Because the Libby amphibole is a contaminant in the vermiculite mined by Grace, the Libby mine was not a regulated source under the NESHAPs Program. 40 C.F.R. § 61.140. As a result, the government argues, the definition of asbestos supplied in the NESHAPs regulations does not apply to this case. The Defendants point out that the government's position would give the word "asbestos" two different meanings within the same statute. If the release comes from a regulated source under 40 C.F.R. § 61.140, then the substance released is asbestos only if it is one of the six species listed in 40 C.F.R. § 61.141. If on the other hand the same substance is released from an unregulated source such as the Libby mine, then, according to the government, the definition of asbestos is broader. The government does not clarify the boundaries of this "broader" definition, except to say that it includes winchite and richterite.

To bolster its argument the government notes that Congress, in enacting AHERA in 1986, included the six-species definition within the text of the statute. According to the government, AHERA shows that when Congress means for the six-species definition of asbestos to apply, it is capable of saying so in the statutory text. This argument fails to account for the fact that there were Clean Air Act regulations adopting the six-species definition of "asbestos" in place at the time of the 1990 Amendments to the Act. That regulatory definition remained in effect after the 1990 Amendments pursuant to the savings provision in § 7412(q)(1).[7] So while Congress did not expressly define "asbestos" in the text of the statute as it did in AHERA, Congress did expressly adopt the existing regulatory standards, including the definition of "asbestos" found at 40 C.F.R. § 61.141. Congress also adopted the regulatory language limiting the applicability of the NESHAPs Program to a list of sources that does not include Grace's Libby operation. *See* 40 C.F.R. § 61.140.

Statutory ambiguity exists when a single-word definition of a hazardous air pollutant can have two different meanings depending on the manner of the release. The government wants to ignore the NESHAPs regulations because they are not part of the statute. The problem with that argument is that § 7412 contemplates and in fact *requires* that regulations be promulgated to establish national emissions standards. 42 U.S.C. § 7412(a)(1)-(3), (c)(1)-(3), (d)(1). Without the regulations § 7412(b)(1)'s listing of hazardous air pollutants is meaningless. Absent reference to the regulations a citizen is left with no guidance about prohibited conduct except the unsatisfactory one-word definition of asbestos in § 7412(b)(1). The statute creates an ambiguity. Section 7412's reference to "asbestos" does not provide fair

---

**7.** 42 U.S.C. § 7412(q)(1) provides in part: "Any standard under this section in effect before the date of enactment of the Clean Air Act Amendments of 1990 [Nov. 15, 1990] shall remain in force and effect after such date unless modified as provided in this section before the date of enactment of such Amendments or under such Amendments."

notice as to which minerals are hazardous air pollutants; the statute's implementing NESHAPs regulations provide a definition, but the civil regulatory nature of the NESHAPs Program renders the applicability of the regulations questionable in the criminal context.

Reliance upon the CAS number for asbestos provides no greater clarity. Section 7412(b)(1) includes CAS numbers for nearly every pollutant listed in that section. Of the few pollutants lacking CAS numbers, the statute provides definitions for all but one. This leads to an inference that the CAS number is intended to serve a definitional function in § 7412(b)(1).

The Chemical Abstract Service is a division of the American Chemical Society. The CAS registry itself is a privately maintained database that cannot be directly accessed unless a fee is paid. The United States points out much of the database's content appears to be available on the EPA's website. Each CAS registry entry consists of a list of information fields for each entry. Information fields include "CAS Registry Number," "Chemical Name," "Molecular Formula," "Heading Parent," "Definition," and many others.

The "Definition" field for the entry found at the CAS registry number for asbestos (1332214) gives the following definition for asbestos: "A grayish, noncombustible fibrous material. It consists primarily of impure magnesium silicate minerals." [8] The government argues that this is where the inquiry should end because the definition is sufficient to put the Defendants on notice as to what conduct is prohibited. The government is correct that the written definition provided in the CAS entry is more detailed than § 7412(b)(1)'s simple reference to "asbestos," but it does not follow that the more detailed definition provides fair notice in the sense that it clearly encompasses the minerals winchite and richterite. To the contrary, further examination of the CAS classification system suggests that winchite and richterite do not fall within the registry's definition of asbestos.

Each of the six minerals included in the regulatory definition of asbestos has a separate entry in the CAS registry under its own unique CAS number. In each of those entries, the "heading parent" is listed as "asbestos," followed by a listing of the name of the individual mineral. [9] The

---

**8.** *See* Attachment 2 to Govt.'s Reply Br. (Doc. No. 631). This document belies the Defendants' contention that the CAS entry for asbestos does not include a definition.

For chrysotile:

> MOLECULAR FORMULA: Unknown
> CA NAME(S):
> > HP=Asbestos
> > NM=chrysotile
> OTHER CA NAMES:
> > HP=Chrysotile asbestos

For crocidolite/riebeckite:

> MOLECULAR FORMULA: Unknown
> CA NAME(S):
> > HP=Asbestos
> > NM=crocidolite
> OTHER CA NAMES:
> > HP=Crocidolite asbestos

**9.** The following are excerpts from the relevant listings (the field "NM" stands for "Name Modification"):

For grunerite:

> MOLECULAR FORMULA: Unknown
> CA NAME(S):
> > HP=Asbestos
> > NM=grunerite
> OTHER CA NAMES:
> > HP=Amosite asbestos

For tremolite:

> MOLECULAR FORMULA: Unknown
> CA NAME(S):
> > HP=Asbestos
> > NM=tremolite
> OTHER CA NAMES:
> > HP=Tremolite asbestos

CAS registry includes several separate listings that contain the terms "winchite" and "richterite." Unlike the CAS entries for the six species listed in the NESHAPs regulations, none of the entries for winchite and richterite lists asbestos as the heading parent, nor does the term "asbestos" appear elsewhere in the entries relating to those two minerals. Instead, the heading parent for each entry is listed as "winchite" or "richterite." *See* Attachments 11–15 to Exhibit 1 to Defs.' Resp. Br. (Doc. No. 581).

A thorough examination of the CAS registry provides strong clues that winchite and richterite are not included in the CAS definition of asbestos. The government argues that any CAS entry other than the one for "asbestos" under the number listed in § 7412(b)(1) is irrelevant. I disagree. The issue here is what the statute tells an actor about the scope of illegal conduct. It is a question of fair notice. Here the statute refers to a private registry that is not likely to be discovered or examined except by a sophisticated actor. Upon finding the entry for asbestos there is a general definition but no clarification with respect to which minerals are included within that definition. It is a fair inference that such a sophisticated actor might then investigate further within the registry in hopes of learning more about the scope of the criminal offense. When he does so, he finds information suggesting that the six species listed in 40 C.F.R. § 61.141 are considered asbestos, while winchite and richterite are not.

■ What matters is that this reading of § 7412(b)(1) is not implausible. From the guidance that Congress has given, a person could reasonably conclude that releases of winchite and richterite are not illegal under the Clean Air Act's knowing endangerment provision. That conclusion would appear even more reasonable to an actor who seeks clarification in the implementing regulations and finds a definition of "asbestos" that coincides with the six species having the heading parent "asbestos" in the CAS registry. From this finding follows the inescapable conclusion that §§ 7413(c)(5)(A) and 7412(b)(1) do not clearly place interested parties on notice of the illegality of releases of winchite and richterite. A court violates due process when it attempts to apply "a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *Lanier*, 520 U.S. at 266, 117 S.Ct. 1219.

The Defendants ask the Court to invoke the rule of lenity. The Supreme Court applied the rule of lenity in a case involving an earlier version of the Clean Air Act.

```
HP=Crocidolite
HP=Asbestos
NM=riebeckite
HP=Asbestos
 NM=magnesioriebeckite
HP=Riebeckite
```

For anthophyllite:

```
MOLECULAR FORMULA: Unknown
CA NAME(S):
 HP=Asbestos
 NM=anthophyllite
OTHER CA NAMES:
 HP=Anthophyllite asbestos
```

Attachments 2–7 to Exhibit 1 to Defs.' Resp.

For actinolite:

```
MOLECULAR FORMULA: Unknown
CA NAME(S):
 HP=Asbestos
 NM=actinolite
OTHER CA NAMES:
 HP=Actinolite asbestos
```

Br. (Doc. No. 581).

Addressing a question of statutory interpretation, the Court wrote:

> At the very least, it may be said that the issue is subject to some doubt. Under these circumstances, we adhere to the familiar rule that, where there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant.

*Adamo Wrecking v. United States,* 434 U.S. 275, 284–285, 98 S.Ct. 566, 54 L.Ed.2d 538 (1978) (citations, internal quotation omitted).

The Supreme Court's language describes the situation in this case. The Clean Air Act's knowing endangerment provision sends an actor in two different directions in search of a definition of the hazardous air pollutant asbestos. One leads to a highly technical, privately maintained chemical database that fails to clarify what minerals are covered. The other requires reference to a civil regulatory scheme that does not apply to all releases and has never governed releases from the Libby mine. A reasonable person who searches both the CAS registry and the NESHAPs regulations could fairly conclude that winchite and richterite are not covered by § 7412(b)(1); neither the statute, the regulations, or the CAS registry explicitly includes those minerals in the definition of "asbestos." It must then be said that the definition of "asbestos" for purposes of the Clean Air Act's knowing endangerment offense is subject to some doubt.

That doubt must be resolved in favor of the Defendants, which means that the statute must be construed to apply "only to conduct clearly covered." *Lanier,* 520 U.S. at 266, 117 S.Ct. 1219. The conduct clearly covered by § 7413(c)(5)(A) is the knowing release of any of the six species of asbestos listed in 40 C.F.R. § 61.141 and appearing under the heading parent "asbestos" in the CAS registry, i.e., the asbes-tiform varieties of serpentinite (chrysotile), riebeckite (crocidolite), cummingtonite-grunerite, anthophyllite, and actinolite-tremolite. This is the definition upon which the jury will be instructed at trial.

### 3. Admissibility of the government's sampling data and expert testimony

The Defendants request sweeping evidentiary rulings based on the Court's construction of §§ 7413(c)(5)(A) and 7412(b)(1). It is my sense that specific rulings are best delayed until the Court has an opportunity to consider the foundation for each piece of evidence or opinion testimony. This may occur through the consideration of other pending motions in limine or through the attempted introduction of evidence at trial. It is clear from the record, however, that some portion of the government's sampling data and expert testimony is inadmissible. At a minimum, any sampling data that commingles the minerals making up what the government calls "Libby amphibole," without differentiating between minerals covered by the Clean Air Act and minerals not covered, is inadmissible under Fed.R.Evid. 403.

 There is an intolerable risk of unfair prejudice should the government be allowed to put on expert after expert testifying that the Defendants endangered others through the release of a deadly composite of minerals without stating with any certainty what percentage of the minerals released are covered by the criminal statute under which the Defendants are charged. The Defendants in that case would be left in the position of having to argue to the jury that although the proof shows that people were endangered by a release of the potentially deadly minerals winchite and richterite, no crime results because the statute does not cover the

minerals released. In light of the comparatively low percentage of covered minerals present in the "Libby amphibole," the probative value of such undifferentiated sampling is far outweighed by the prejudicial effect of the evidence. Expert testimony based on undifferentiated samples is probably inadmissible under Fed.R.Evid. 702 and the relevance prong of *Daubert* because it does not "fit" the facts of the case. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591–593, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

## IV. Order

Based on the foregoing, IT IS HEREBY ORDERED that the government's Motion in limine #2 to Exclude Evidence and Argument that Defendants Were Regulated by the Clean Air Act's NESHAPs Program (Doc. No. 462) is DENIED.

IT IS FURTHER ORDERED that the Defendants' Joint Motion in limine to Exclude Evidence Based on Sample Results Indicating the Presence of Fibers from Minerals that do not Constitute "Asbestos" Under the Clean Air Act (Doc. No. 474) is GRANTED insofar as the definition of "asbestos" for purposes of the Clean Air Act Counts (Counts II through IV) is limited to the asbestiform varieties of serpentinite (chrysotile), riebeckite (crocidolite), cummingtonite-grunerite, anthophyllite, and actinolite-tremolite.

IT IS FURTHER ORDERED that evidentiary rulings based on this Order will be made on a case-by-case basis in subsequent orders resolving pending motions in limine, or at trial.