UNITED STATES of America, Plaintiff,

v.

W.R. GRACE, Alan R. Stringer, Henry A. Eschenbach, Jack W. Wolter, William J. McCaig, Robert J. Bettacchi, O. Mario Favorito, Robert C. Walsh, Defendants.

No. CR 05–07–M–DWM.

United States District Court, D. Montana, Missoula Division.

Aug. 9, 2006.

Kris A. McLean, Office of the U.S. Attorney, Missoula, MT, William W. Mercer, Office of the U.S. Attorney, Billings, MT, Thomas L. Sansonetti, David M. Uhlmann, U.S. Department of Justice, Washington, DC, for Plaintiff.

Angelo J. Calfo, Harold Malkin, Michelle K. Peterson, Yarmuth Wilsdon Calfo, Seattle, WA, Michael F. Bailey, Bailey & Antenor, William Adam Duerk, Michael J. Milodragovich, Milodragovich Dale Steinbrenner & Binney, Missoula, MT, David S. Krakoff, Gary A. Winters, James T. Parkinson, Mark Holscher, Mayer Brown Rowe Maw LLP, Washington, DC, Ronald F. Waterman, Gough Shanahan Johnson & Waterman, Palmer A. Hoovestal, Hoovestal Law Firm, Helena, MT, Jeremy Malt-

by, O'Melveny & Myers, Los Angeles, CA, Elizabeth Van Doren Gray, Sowell Gray Stepp & Lafitte, Columbia, SC, William A. Coates, Roe Cassidy Coates & Price, Greenville, SC, Stephen R. Spivack, Bradley Arant Rose & White, Washington, D.C., David E. Roth, Bradley Arant Rose & White LLP, Birmingham, AL, for Defendants.

## ORDER

MOLLOY, Chief Judge.

### I. Introduction

The motion now before the Court presents yet another question of first impression in interpreting the criminal knowing endangerment provision of the Clean Air Act, 42 U.S.C. § 7413(c)(5)(A). Defendant Grace has filed a motion on behalf of all Defendants seeking an order excluding all evidence of or derived from releases of asbestos that do not constitute "visible emissions" for purposes of the Clean Air Act's implementing regulations.[1] The Defendants intend to rely on an affirmative defense to the Clean Air Act violations charged in Counts II through IV of the Superseding Indictment, i.e., that the charged releases did not violate the emissions standards for asbestos set by the Environmental Protection Agency (EPA) Administrator. Because they will be able to establish the affirmative defense, the Defendants argue, the Government must meet its burden to disprove the affirmative defense by showing that the alleged releases constitute visible emissions for purposes of the Clean Air Act. The Defendants contend that in light of the Government's burden to prove releases that are visible emissions, any evidence of releases that are not visible emissions must be excluded as irrelevant and unfairly prejudicial.

The Government opposes the motion, arguing that the affirmative defense relied upon by the Defendants is unavailable in this case because the emissions standard set by the Administrator did not apply to Defendant Grace's Libby operation.

This motion presents two questions. First is a question of statutory construction, that is, does the affirmative defense to criminal knowing endangerment apply when the source of the release is not covered by EPA regulations? Assuming the affirmative defense applies, the second question is whether the Government's proof must be excluded if the Court concludes that the Government is not likely to disprove the affirmative defense.

### II. Background

The Clean Air Act's knowing endangerment provision provides:

Any person who knowingly releases into the ambient air any hazardous air pollutant listed pursuant to section 7412 of this title or any extremely hazardous substance listed pursuant to section 11002(a)(2) of this title that is not listed in section 7412 of this title, and who knows at the time that he thereby places another person in imminent danger of death or serious bodily injury shall, upon conviction, be punished by a fine under Title 18, or by imprisonment of not more than 15 years, or both. Any person committing such violation which is an organization shall, upon conviction under this paragraph, be subject to a fine of not more than $1,000,000 for each violation. If a conviction of any person under this paragraph is for a violation committed after a first conviction of such person under this paragraph, the maximum punishment shall be doubled with respect to both the fine and imprisonment. *For any air pollutant for which the Administrator has set an emissions standard or for any source for which a permit has been issued under subchapter V of this chapter, a re-*

---

1. Although they joined in the filing of the instant motion, Defendants Eschenbach, McCaig, Walsh and Favorito are not affected by its outcome. The only Clean Air Act charge against those Defendants was the knowing endangerment object of the conspiracy charged in Count I of the Superseding Indictment. That charge was dismissed by this Court on July 27, 2006 (Doc. No. 690).

*lease of such pollutant in accordance with that standard or permit shall not constitute a violation of this paragraph or paragraph (4).*

42 U.S.C. § 7413(c)(5)(A) (emphasis added).

■ The National Emissions Standards for Hazardous Air Pollutants (NESHAPs) include an emissions standard for asbestos set by the Administrator pursuant to § 7412 of the Clean Air Act. The emissions standard for asbestos is "no visible emissions." *See* 40 C.F.R. §§ 61.140–61.157. The asbestos emissions standard is repeated in several sections, all of which fall under the heading "Subpart M—National Emission Standard for Asbestos." Section 61.140 under Subpart M states: "The provisions of this subpart are applicable to those sources specified in §§ 61.142 through 61.151, 61.154, and 61.155." Defendant Grace's Libby mine was not a regulated source under § 61.140 and was therefore not subject to the civil regulatory emissions standards established under the subpart.

The question of the availability of § 7413(c)(5)(A)'s affirmative defense was raised by the parties in the briefing on the Defendants' motion to dismiss the Clean Air Act charges for failure to allege breach of an emissions standard (Doc. No. 254). The Court declined to address the issue at that point, stating that the matter should await resolution until trial. *See United States v. Grace,* 429 F.Supp.2d 1207, 1230 n. 20 (D.Mont.2006). The Defendants' motion in limine now places the applicability of the affirmative defense squarely at issue.

### III. Analysis

**A. The availability of the § 7413(c)(5)(A)'s affirmative defense**

**1. Legal standard**

■ In interpreting a criminal statute to determine what it means, courts must look first to the language of the statute, and second to the legislative history of the law. *United States v. Weitzenhoff,* 35 F.3d 1275, 1283 (9th Cir.1994). A court should seek to "give effect to the plain, common-sense meaning of the enactment without resorting to an interpretation that defies common sense." *United States v. Bonilla–Montenegro,* 331 F.3d 1047, 1051 (9th Cir.2003) (internal quotation marks omitted). The plain language of the statute is to be ignored only when a literal interpretation of the statute would thwart the purpose of the statutory scheme and lead to an absurd result. *County of Santa Cruz v. Cervantes,* 219 F.3d 955, 960 (9th Cir. 2000). Courts should also reject any interpretation that would render another statutory provision surplusage or a nullity. *Id.* at 961. Resort to the legislative history for aid in interpreting a statute is only appropriate when the terms of the statute are ambiguous. *Burlington N. R.R. Co. v. Oklahoma Tax Comm'n,* 481 U.S. 454, 461, 107 S.Ct. 1855, 95 L.Ed.2d 404 (1987) ("Unless exceptional circumstances dictate otherwise, when we find the terms of a statute unambiguous, judicial inquiry is complete." (internal quotation marks omitted)).

■ When a criminal statute's meaning remains ambiguous after application of the rules of statutory construction, the rule of lenity requires that the law be interpreted to cover only conduct that clearly falls within its scope. *United States v. Lanier,* 520 U.S. 259, 266, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997); *United States v. Shabani,* 513 U.S. 10, 17, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994).

**2. Discussion**

The Government argues at the outset that this question of statutory construction

was resolved by the Court's March 3, 2006 Order ruling on the Defendant's motions to dismiss. The Government relies upon the following quote from that Order: "The relevant question is whether Congress meant to only criminalize the knowing release of a hazardous air pollutant which causes endangerment if the release violates an emissions standard set by the EPA. The text and structure of the statute show Congress did not so intend." *Grace,* 429 F.Supp.2d at 1233. The Government contends that this statement "leads to a rejection" of the Defendants' argument. Govt.'s Resp. at p. 4. The Government's argument is wrongheaded. The quoted passage comes from the Court's discussion of the question there at issue, i.e., whether § 7413(c)(5)(A)'s emission clause sets forth an element of the offense or an affirmative defense. *Id.* at 1231–1236. The issue was resolved by a determination that the emissions clause is an affirmative defense. *Id.* The quoted passage does not implicate the applicability of that affirmative defense to this case. The Order concluded that in some cases conduct that is not governed by the civil regulatory statute may nonetheless be criminal, but it did not decide whether this case presents such a scenario.

██  The applicability of the affirmative defense can be determined by reference to the plain language of the statute. The emissions clause states:

> For any *air pollutant* for which the Administrator has set an emissions standard or for any source for which a permit has been issued under subchapter V of this chapter, a release of such pollutant in accordance with that standard or permit shall not constitute a violation of this paragraph or paragraph (4).

42 U.S.C. § 7413(c)(5)(A) (emphasis added). To establish the affirmative defense set forth in the emissions clause the Defendants must show (1) that the Administrator has set an emissions standard for asbestos and (2) that the alleged release was done in accordance with that standard. The first of these propositions is unquestionably met; the Administrator has set a standard of "no visible emissions" for asbestos. The second proposition is a question of fact that must be established at trial, and there is no reason to deny the Defendants the opportunity to do so.

The Government argues that the affirmative defense requires that the Defendants show something more. According to the Government, "[b]ecause the 'no visible emissions' requirement applies only to 'sources,'[2] this emissions standard is not an emissions standard for purposes of the Clean Air Act knowing endangerment offense under section 7413(c)(5)(A), where the release did not come from a regulated source." Govt.'s Resp. at p. 3. The Government's attempt to graft additional elements onto § 7413(c)(5)(A)'s affirmative defense has no basis in the language of the statute. The "no visible emissions" regulatory standard applies only to regulated sources *in the civil regulatory context.* This is the effect of 40 C.F.R. § 61.140, which limits the reach of the civil NESHAPs program to the listed sources of asbestos. But there is no comparable limiting provision in § 7413(c)(5)(A). The statute invokes only the emissions standard, not the limitations that are set forth elsewhere in the regulatory scheme.

The statute reads, "For any air pollutant for which the Administrator has set an

---

**2.** The Court has elsewhere discussed in detail the Clean Air Act's regulation of "sources" of hazardous air pollutants, most recently in the August 7, 2006 Order regarding the definition of "asbestos" for purposes of the Clean Air Act's knowing endangerment offense. *See United States v. Grace,* 455 F.Supp.2d 1122, 1126 n. 3, 2006 WL 2258518 at *2 n. 3 (D.Mont.2006).

emissions standard, . . . ;" it does not say, "For any *release* that is subject to an emissions standard, . . . ," nor does it say, "For any *source* for which the Administrator has set an emissions standard, . . . ." Had the Congress chosen either of the latter two examples, the Government would be justified in arguing that the affirmative defense requires a showing that the release came from a source subject to the civil regulations. Congress instead chose to invoke only the emissions standard. The Government's insistence on looking to other provisions of the civil regulatory scheme for further limitations on the scope of the affirmative defense seems like a strategic effort to define the affirmative defense out of existence. The absence of statutory support for the Government's reading is the manifestation of the *reductio ad absurdum* that results in the Government's argument that "[the] emissions standard is not an emissions standard . . . ." Govt.'s Resp. at p. 3. The falsity of the argument is proved by reducing it to the point of absurdity.

The language of § 7413(c)(5)(A)'s emissions clause is unambiguous, which means resort to the legislative history of the statute is unnecessary. Congress has exempted from criminal liability any release of a hazardous air pollutant that is made in accordance with an emissions standard for that pollutant. The Defendants must establish that the charged releases were made in accordance with the "no visible emissions" standard applicable to asbestos. Should they succeed in doing so at trial, they will be entitled to an instruction on the affirmative defense set out in the emissions clause.

**B. Admissibility of the Government's proof**

The Defendants ask that any evidence of emissions that are not visible emissions be excluded as irrelevant. Defendants note that while they bear the burden of going forward with their affirmative defense, the burden of disproving the defense shifts to the Government once the Defendants have satisfied their initial burden of production. The Defendants want a pretrial finding that they have met that burden, thereby shifting the burden of proof to the Government before the trial even begins. This notion is at odds with the status of the emissions clause as an affirmative defense rather than an element of the offense.

In *United States v. Freter*, 31 F.3d 783, 789 n. 6 (9th Cir.1994), the Court explained the evidentiary burdens imposed with regard to an affirmative defense in a criminal case:

> In holding that the exception for "federally permitted" releases states an affirmative defense, we do not intend to imply that the government's ultimate burden of proving beyond a reasonable doubt every fact necessary to constitute the offense is altered. Instead, we hold only that if the defendant wishes to rely on this exception, he has the initial burden of going forward with sufficient evidence to raise the exception as an issue. *United States v. Smith,* 981 F.2d 887, 891–92 (6th Cir.1992); *Hester,* 719 F.2d at 1043; *Guess,* 629 F.2d at 577 n. 4. Once the defendant has satisfied his burden of production with respect to the affirmative defense, the prosecution must prove the inapplicability of the defense beyond a reasonable doubt. *Guess,* 629 F.2d at 577 n. 4. In this case, Freter never proffered as a defense that the release was federally permitted.

The Defendants cite *Freter* as support for their motion, but nowhere in the opinion does the *Freter* court suggest that the defense can meet its burden of production and shift the burden of proof to the prose-

cution before the trial begins. The issue did not arise in *Freter* because the defendant in that case failed to raise the affirmative defense by offering sufficient proof at trial. *Id.*

There is no support for the Defendants' position in the other cases cited in *Freter.* In *United States v. Smith,* 981 F.2d 887, (6th Cir.1992), a defendant charged with assault on a postmaster and robbery of a post office pled guilty to the charges without raising the defense that the weapon used in the offense was an antique firearm. In holding that the antique firearm is an affirmative defense that must be raised by the defendant, the court wrote, "Therefore, as the defendant in this case did not raise the antique weapons exception as an affirmative defense either at his change of plea hearing or his sentencing hearing, the government was under no obligation to disprove the applicability of the antique firearms exception." *Id.* at 891–892. The defendant in *Smith* chose not to proceed to trial, so *Smith* offers no useful clues as to the proper procedure for the shifting of burdens relative to an affirmative defense. However, the *Smith* court cites *United States v. Laroche,* 723 F.2d 1541, 1543 (11th Cir.1984), in which the Eleventh Circuit held that a defendant convicted by a jury failed to establish the antique firearms defense. The *Laroche* court wrote: "Here, the defense *introduced no evidence* that the weapons came within the exception; accordingly the government was under no obligation to disprove its applicability." *Id.* (emphasis added). The language of *Laroche* means that the proper time for the defendant to make his proffer with regard to an affirmative defense is at trial.

Similar procedure was followed in *United States v. Guess,* 629 F.2d 573 (9th Cir. 1980), and *United States v. Hester,* 719 F.2d 1041 (9th Cir.1983). In *Guess,* a defendant hoping to establish a "sporting purposes" defense to charges of interstate shipment of explosives by a felon attempted to do so by introducing evidence of his sporting intentions at trial. 629 F.2d at 574. The court held that the defendant succeeded in meeting his burden of production, but that the government met its burden of disproving the affirmative defense at trial. *Id.* at 577. In *Hester,* the defendant was charged with sex crimes against Indian students on the Navajo Reservation. The statute under which the defendant was charged did not apply to offenses by one Indian against another. In holding that the defendant failed to establish the defense that he was an Indian, the court wrote, "He does not contend that he is in fact an Indian, and raised no such issue at trial." 719 F.2d at 1043. These cases, like *Laroche,* suggest that the defendant's burden of production with regard to an affirmative defense must be met at trial, and not before.

This construction stands to reason. If a defendant could obtain a pretrial ruling that he will meet his burden at trial, and thereby shift the burden to the prosecution to disprove the affirmative defense before the trial even begins, then the affirmative defense would be indistinguishable from the elements of the crime. Such a procedure would require the affirmative defense to be disproved in the prosecution's case-in-chief, which is incompatible with the rule that Government need only establish the elements of the offense at trial.

■ The proper function of the affirmative defense in this case requires the Defendants to raise the defense during their case-in-chief and to meet their initial burden of production. Should they succeed in meeting their burden, the Government must then disprove the affirmative defense beyond a reasonable doubt and the jury will be instructed on the elements of the affirmative defense. None of this requires

that evidence of non-visible emissions per se be excluded as irrelevant. The Government need only establish the elements of the offense, which do not require proof that the releases were visible. The Defendants' motion in limine is denied.[3]

## IV.  Order

Based on the foregoing, IT IS HEREBY ORDERED that the Defendants' motion to exclude evidence of emissions that are not visible emissions (Doc. No. 498) is DE-NIED.

---

**3.**  This should not be construed as a conclusion that the Government's evidence of asbestos releases is admissible. Prior orders of the Court, most notably the Court's August 7, 2006 Order regarding the statutory definition of asbestos, 455 F.Supp.2d 1122, 2006 WL 2258518, will likely render inadmissible much of the Government's proof relating to the Clean Air Act allegations.